[Civ. No. 37728. First Dist., Div. Three. Sept. 28, 1977.]

ROBERT GERALD LOSTRITTO, Plaintiff and Appellant, v.
SOUTHERN PACIFIC TRANSPORTATION COMPANY,
Defendant and Appellant.

[Civ. No. 38388. First Dist., Div. Three. Sept. 28, 1977.]

ROBERT GERALD LOSTRITTO, Petitioner, v.
THE SUPERIOR COURT OF SANTA CRUZ COUNTY,
Respondent;
SOUTHERN PACIFIC TRANSPORTATION COMPANY,
Real Party in Interest.

742

**COUNSEL**

Boccardo, Blum, Lull, Niland & Bell, Boccardo, Blum, Lull, Niland, Teerlink & Bell and Edward J. Niland for Plaintiff and Appellant and for Petitioner.

Morris & Polich, Landon Morris, Wyckoff & Miller and Stephen Wyckoff for Defendant and Appellant and for Real Party in Interest.

No appearance for Respondent.

## OPINION

DEVINE, J.*—On May 28, 1972, plaintiff minor, then 16 years old, dived from a trestle owned by Southern Pacific Transportation Company into the San Lorenzo River, a stream whose depth fluctuates with the tides of the ocean into which it flows. His neck was broken; he is quadriplegic. He had dived 30 to 40 times from the trestle during the 3-day period before the accident. This action charges negligence and willful misconduct against Southern Pacific. The jury gave answers to interrogatories against defendant on these charges and rendered a general verdict for plaintiff in the amount of $3 million.[1] Plaintiff's complaint is based on the proposition that young persons frequently used the trestle as a diving place and that there was a particular hazard because of the fluctuations of depth of the river and that defendant failed to take preventive measures or to warn of the danger.

### Willful Misconduct

■ The jury by 10 to 2 vote answered affirmatively the special interrogatory as to willful misconduct on the part of defendant. Following judgment, the court granted a motion for new trial; in respect of willful misconduct, the judge noted in his grounds and specifications that there was newly discovered material evidence which could not with ordinary diligence have been discovered, and that this evidence is material to the issue of willful misconduct of the plaintiff, and that it is reasonably probable that there would have been a different result. The new evidence consists of the declarations of two young men that plaintiff was warned by them and by others, immediately before the dive, that the water was not deep enough and that he had replied that he had been diving all day. This would contradict plaintiff's testimony that he was not warned not to dive and that he did not know the depth of the river. Perhaps, as plaintiff argues, the witnesses did not have sufficient

_____

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

[1]The case was tried before the decision in *Li v. Yellow Cab Company,* 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], wherefore the opinion in that case does not affect this appeal. (At p. 829.)

information about the depth of the water at the exact place where the dive would occur to give an informed warning; although in fact it seems they were right. But the fact (we assume the witnesses' veracity for present purposes) that they did give a warning from their position in the water and that plaintiff chose to disregard it, is sufficient to support the grant.

Southern Pacific appeals from the judgment and from the order denying its motion for judgment notwithstanding the verdict on the ground that there was no evidence to support the jury's finding of willful misconduct on the part of the railroad and that the conduct of plaintiff bars recovery as a matter of law.

The first question is whether, as a matter of law, and contrary to the specific finding of the jury, and the denial of the motion for summary judgment, the railroad must be adjudged to be free of willful misconduct. The subject was defined to the jury in accord with BAJI No. 3.52 (5th ed. 1969) thus: "Wilful or wanton misconduct is intentional wrongful conduct, done either with knowledge that serious injury to another will probably result, or with a wanton and reckless disregard of the possible results." That the necessary elements of willful misconduct legitimately could be found, as was done by the jury, appears from these facts: the trestle crossed a river near a popular swimming and bathing area; there was easy access from the beaches to the trestle by a stairway; there was a walkway open to the public across the trestle; there was a railing but no real barrier reaching protruding beams which formed a sort of platform from whence plaintiff dived; the practice of diving from the trestle was described by an assistant city attorney as of common knowledge to those who were at the beach, and as having gone on for years; a lifeguard had told a railroad crew about the practice and had received assurance that the word would be passed on, and later that word had gone through proper channels; in about 1961, another lifeguard had told a lawyer at the railroad's San Francisco office that "people dove and jumped in" from the trestle and in several instances people had been hurt. A roadmaster for the railroad testified at his deposition that when he took charge of the district (in 1973) his track supervisor had told him that "people normally dive off that bridge," that "there is always people diving off of that bridge";[2] in 1963, a 20-year-old marine dived off the

---

[2]The witness testified at trial that he had been in error—that he had been told that people were diving "off the rocks." But on motion for judgment notwithstanding the verdict, the evidence must be considered favorably to the party for whom the verdict was rendered. (*Brandenburg* v. *Pac. Gas & Elec. Co.,* 28 Cal.2d 282, 284 [169 P.2d 909].)

trestle, broke his neck and was killed, and the incident was reported in the Santa Cruz newspaper.

A cyclone fence would have cost but $1,148; an irremovable sign, $50. There was no sign warning of danger. Considering the elements of notice, actual and constructive, and that knowledge may be proved by circumstantial as well as by direct evidence (*Dowden* v. *Industrial Acc. Com.*, 223 Cal.App.2d 124 [35 Cal.Rptr. 541]; Witkin, Cal. Evidence (2d ed. 1966) Circumstantial Evidence, § 368, p. 327), we conclude that the railroad was charged with notice of a dangerous condition which existed for a long time.

It is argued by appellant railroad that because there was but one prior accident (the fatal one) of which the railroad may have been charged with notice, the most that can be said is that there was the possibility of accident, not the probability thereof; wherefore, under the requirement of high probability of harm (*Donnelly* v. *Southern Pacific Co.*, 18 Cal.2d 863, 869 [118 P.2d 465]; *Bains* v. *Western Pacific R. R. Co.*, 56 Cal.App.3d 902 [128 Cal.Rptr. 778]; *Givens* v. *Southern Pacific Co.*, 194 Cal.App.2d 39, 43-44 [14 Cal.Rptr. 736]; *Morgan* v. *Southern Pacific Trans. Co.*, 37 Cal.App.3d 1006, 1011 [112 Cal.Rptr. 695]), a charge of willful misconduct cannot be sustained. This ignores the testimony of the lifeguard that he reported injuries in other cases at the railroad's main office. ■ Besides, the matter of probability is not to be assessed solely by the number of prior accidents, which adventitiously may have been few, but by all of the circumstances. (*Dziura* v. *California Aviation Service, Inc.*, 4 Cal.App.3d 191, 200 [84 Cal.Rptr. 191]; *Olea* v. *Southern Pacific Co.*, 272 Cal.App.2d 261, 266 [77 Cal.Rptr. 332].)

■ That contributory negligence is no defense to the charge of willful misconduct has been the rule in California. (*Haft* v. *Lone Palm Hotel*, 3 Cal.3d 756, 778 [91 Cal.Rptr. 745, 478 P.2d 465]; *Morgan* v. *Southern Pacific Trans. Co.*, *supra*, at p. 1015; *Williams* v. *Carr*, 68 Cal.2d 579, 583-584 [68 Cal.Rptr. 305, 440 P.2d 505]; *Pelletti* v. *Membrila*, 234 Cal.App.2d 606 [44 Cal.Rptr. 588].) Although willful misconduct on the part of plaintiff was alleged as a defense in the railroad's answer and presented to the jury, the jury impliedly found against the defense and the trial judge refused to grant judgment notwithstanding the verdict on the willful misconduct count. Appellant railroad does not argue in its briefs that plaintiff was guilty of willful misconduct as a matter of law,

but contends that he assumed the risk of the dive.[3] The judge, in granting the motion for new trial, stated as one ground error in failing to instruct on assumption of risk. But he did not, nor do we, find plaintiff to have assumed the risk as a matter of law. ■ The defense of assumption of risk is valid only when the plaintiff had actual knowledge and appreciation of the specific danger involved and its magnitude. (*Vierra* v. *Fifth Avenue Rental Service,* 60 Cal.2d 266, 274 [32 Cal.Rptr. 193, 383 P.2d 777].) ■ These factors have not been established by the conclusive evidence necessary to sustain defendant's motion. Plaintiff's testimony is that he relied on his experience with his earlier dives. Under this state of the case, the order denying defendant's motion for judgment notwithstanding the verdict must be affirmed and since the order granting new trial is to be affirmed, defendant's appeal from the judgment must be dismissed. (6 Witkin, Cal. Proc. (2d ed. 1971) Appeal, § 350, p. 4324.)

*Negligence*

■ Although the judgment notwithstanding the verdict on the negligence count was based on the judge's decision that there was contributory negligence as a matter of law, we find it unnecessary to discuss that subject because of our conclusion that under the provisions of section 846 of the Civil Code, defendant cannot be held responsible for negligence.[4] Section 846 provides that an owner of any estate in real property owes no duty of care to keep the premises safe for entry or use by others for fishing, hunting, camping, water sports, hiking, spelunking, riding, including animal and all types of vehicular riding, rock collecting, or sightseeing, or to give any warning of hazardous conditions, uses of, structures, or activities; except where there is willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity, or where there was express invitation or where consideration was paid. Since the railroad was owner of the estate (it owned the trestle and the

---

[3] It is to be noted that we speak of assumption of risk as that doctrine was construed prior to the decision in *Li* v. *Yellow Cab, supra.*

[4] Section 846 was presented in the trial court by defense motion for summary judgment. The complaint then was on the negligence ground only. The motion was denied, whereupon the willful misconduct cause was added by amendment. Thereafter, certain instructions offered by plaintiff on the subject of negligence were presented without reference to the proposal that they be regarded as under compulsion of the ruling. But this by no means withdrew the issue, as defendant contends. The trial judge explained to the jury, following the verdict, that he had required the special interrogatories on both theories because of his concern whether an action for negligence would lie in view of the statute.

subjacent river bottom) and diving is a water sport, it appears that the railroad cannot be held liable for failure to use ordinary care in the keeping of the premises or in the matter of warning. Nor does plaintiff propose any escape from the provisions of the statute; rather, he contends that the statute is unconstitutional on the ground of denial of equal protection of the laws.

Plaintiff's argument is this: section 846 singles out certain classes of persons who may sustain injury (among them those engaging in water sports) as being deprived of ordinary care on the part of the landowner, but irrationally omits from the deprivation persons engaged in like activities, e.g., flying kites, throwing frisbies or horseshoes, playing touch football, hitting golf balls, skiing, gathering wildflowers or using gliders; further, if the legislative policy back of the statute was to reduce the tendency of landowners to withdraw their property from recreational use (see *English* v. *Marin Mun. Water Dist.*, 66 Cal.App.3d 725, 731 [136 Cal.Rptr. 224]), the statute goes too far in that it applies to properties such as the trestle which are not of the kind likely to be used (and in peril of being withdrawn from use) for recreational purposes. Thus, by underinclusion on the one hand and overinclusion on the other,[5] argues plaintiff, the statute creates classifications which are irrelevant to the purpose of the statute itself, and hence are unreasonable and violative of equal protection.

### Underinclusion

The burden of demonstrating the invalidity of the classification in this case rests squarely on the plaintiff as the party assailing it. (*Schwalbe* v. *Jones*, 16 Cal.3d 514, 518 [128 Cal.Rptr. 321, 546 P.2d 1033].) The case is not one in which fundamental rights are involved. Nor is it one in which the classification is suspect. (See *Brown* v. *Merlo*, 8 Cal.3d 855, 862, fn. 2 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505].)

The Legislature has enumerated certain activities in section 846; they are mostly the major ones which would be undertaken by entrants to the property of another: camping, fishing, water sports, hunting, riding

---

[5] These expressive neologisms are used in the treatise by Professor Gray of the University of Michigan Law School: *Developments in the Law—Equal Protection* (1969) 82 Harv.L.Rev. 1065-1206. It is convenient to use them herein.

vehicles or animals, and sightseeing. These are activities in which accidents may be most likely because of the number of visitors, because of participants' moving through large areas, and because, especially in the very activity involved here, water sports, of perils of currents, shallows or depths. The fact that other activities which plaintiff-appellant has thought of do not appear in the statute does not show legislative arbitrariness. They simply may not have occurred to the legislators as involving any considerable risk which would be associated with the condition of the property.[6] In respect of touch tackle, pitching horse-shoes, throwing Frisbies, or hitting golf balls, the need of a rather fixed space might itself reduce the likelihood of accident attributable to the owner; skiing, except the cross-country kind (which perhaps is not risky, or was not deemed to be by the lawmakers), usually requires paying for the use of the area and brings the sport outside section 846. To be sure, the wildflower gatherer who is injured is not barred by 846 from proceeding on negligence, although the spelunker and the rock collector are barred. A whole series of contrasts could be compiled. But whether the Legislature decided that the rock collector ordinarily is in more peril than the plucker of flowers or whether the omission of the latter's pastime be merely an oversight, there is no discernible sinister motive, nor is there offensive discrimination, and surely the diver is more likely to be in danger than almost any other user of property. The case is quite different from those in which there is a definite, irrational dichotomy in fact. As an example of invidious discrimination in one case cited by appellant, *Gawzner Corp.* v. *Minier,* 46 Cal.App.3d 777 [120 Cal.Rptr. 344], advertising of rates by signs was forbidden to motels, but not to hotels, which actually did freely post their rates on signs. This, and similar cases, are different from the omission of a few from a litany of activities.

If the statute were held unconstitutional because of the failure to list some lesser sports, this would destroy completely the protection which the Legislature has devised for the benefit of landowner and visitor alike. Moreover, even if the omitted sports, which have suggested themselves to appellant as examples, were brought within section 846 by amendment if plaintiff's proposition be upheld, the section might still be subject to future attack because still others were not included.

---

[6]The Legislature added to the original list of "exempt" activities: riding (1970), rock collecting (1971), and spelunking (1976). But it has not removed any category from the list. Thus there appears a policy of increasing protection to landowners as attention is centered on additional categories.

*Overinclusion*

■ It is to be noted that the asserted overinclusion is not one in which a burden is directly imposed on some persons and not on others, but one in which an exemption was granted to owners unnecessarily, according to plaintiff, thus denying him equality because his case is within the exempt category. Not only, says plaintiff, are rural lands, woodlands and the like the subject of section 846, but so are premises generally unsuited for recreation, although they are in fact used at the time of an accident for the described purposes. Among these is the trestle.

But section 846 is not designed, and no doubt could not be drafted, to absolve from the charge of simple negligence only the owners of such properties ordinarily entered by persons seeking recreation. Nor does it exempt (no doubt it could not) from claims for simple negligence those only who have notice of its provisions, and who would be enticed to refrain from fencing or guarding their property. It applies to those who without it would fence their lands, to those who, with it, fence them anyway, and to those who do not know of its existence. The Legislature probably decided not only that freedom of recreation should be encouraged, but also that it is unfair to permit claims for negligence in favor of persons who choose to enter the lands of others for the described activities. ■ Where the standard involved is the traditional one because it does not deal with suspect classifications, or the alleged infringment of a fundamental interest, equal protection requires only that the challenged statute must bear some rational relationship to a legitimate state end. Such a statute will be set aside on equal protection grounds only if it is based on reasons totally unrelated to the pursuit of that goal. The Legislature is presumed to have acted constitutionally and the statutory classification will be set aside only if no ground can be conceived to justify it. (*Weber* v. *City Council,* 9 Cal.3d 950, 961 [109 Cal.Rptr. 553, 513 P.2d 601]; *McDonald* v. *Board of Election,* 394 U.S. 802, 809 [22 L.Ed.2d 739, 745-746, 89 S.Ct. 1404]; *People* ex rel. *Younger* v. *County of El Dorado,* 5 Cal.3d 480, 502-506 [96 Cal.Rptr. 553, 487 P.2d 1193].)

*The One Final Judgment Rule*

■ Plaintiff-appellant challenges the grant of the order for judgment notwithstanding the verdict on the negligence charge, contending that to render such judgment while granting a new trial on the willful misconduct issue violates the one-judgment rule. This challenge is stated

in the briefs on appeal but is chiefly made by a petition for writ of certiorari protesting the court's jurisdiction to render the judgment. It will be noted that the judgment notwithstanding the verdict was granted on the ground of contributory negligence existing as a matter of law. Presently, because of our decision on the constitutionality of section 846, the posture of the case has changed; it is not because of an adverse factual situation that plaintiff cannot recover on the negligence count, but because of statutory provisions.

 "The theory [supporting the rule] is that piecemeal disposition and multiple appeals in a single action would be oppressive and costly, and that a review of intermediate rulings should await the final disposition of the case." (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 36, p. 4050.) The proper disposition, it seems, is to order the dismissal of the negligence cause of action, leaving the willful misconduct cause to proceed to one final judgment. (See *Shepardson* v. *McLellan,* 59 Cal.2d 83 [27 Cal.Rptr. 884, 378 P.2d 108].)

The order granting new trial on the willful misconduct issue is affirmed, and defendant's appeal from the judgment is dismissed. The order denying judgment notwithstanding the verdict on the willful misconduct issue is affirmed. The negligence count is ordered dismissed. The petition for writ of certiorari is denied and the alternative writ is discharged. Each party will bear its own costs on the appeal and the special proceeding.

Scott, Acting P. J., and Good, J.,* concurred.

A petition for a rehearing was denied October 28, 1977, and the petition of the plaintiff and appellant for a hearing by the Supreme Court was denied December 15, 1977.

---

*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.