[Civ. No. 54072. Second Dist., Div. Two. Mar. 9, 1979.]

DARREN LAMONT DURHAM, a Minor, et al.,
Plaintiffs and Appellants, v.
CITY OF LOS ANGELES et al., Defendants and Respondents.

COUNSEL

C. C. Headley for Plaintiffs and Appellants.

Burt Pines, City Attorney, John T. Neville, Assistant City Attorney, Daniel U. Smith, Deputy City Attorney, Morris & Polich, Landon Morris, John K. Morris, Robert S. Wolfe, Albert & Schmiege and Merrill K. Albert for Defendants and Respondents.

OPINION

BEACH, J.— Darren Lamont Durham and his mother Dorothy Durham sued the Southern Pacific Transportation Company and the City of Los Angeles et al. for injuries suffered when Darren was trying to hop a railroad train near his home.[1] A judgment of nonsuit was entered for the City of Los Angeles, and a judgment after jury trial was entered for defendant Southern Pacific Transportation Company and against plaintiff. Appellants appeal from the judgment of nonsuit and from the judgment for defendant Southern Pacific Transportation Company.

---

[1]Darren, who was approximately seven years old at the time of the accident, testified that he was throwing rocks at the train when he "just got grabbed," tried to put his feet on the bar of the train, and fell, cutting off both his legs. Inferences from other testimony

## CONTENTIONS ON APPEAL

1. Civil Code section 1714.7 is unconstitutional as a denial of equal protection of the law under the United States and California Constitutions.

2. Civil Code section 1714.7 is unconstitutional as a violation of the privileges and immunities clause of the California Constitution.

3. Civil Code section 1714.7 is unconstitutional as a special statute.

4. Conflicting jury instructions have resulted in a miscarriage of justice.

 5. The trial court erred in granting nonsuit in favor of respondent City of Los Angeles.[2]

## DISCUSSION

1. *Civil Code section 1714.7 is constitutional.*

The jury in the case at bench was instructed regarding respondent's possible negligence. The jury was additionally instructed with a modified version of Civil Code section 1714.7 as follows: "No person who is injured while getting on, or attempting to get on, a moving locomotive or railroad car, without authority from the owner or operator of the railroad, or who, having gotten on a locomotive or railroad car while in motion without such authority, is injured while so riding or getting off, shall recover any damages from the owner or operator thereof for such injuries unless proximately caused by a wanton and reckless disregard of the probable result of such act."[3]

---

leads to the conclusion that Darren was attempting to hop the train. As an appellate court, we must accept inferences favorable to the judgment.

[2] In their reply brief, appellants raise two issues that they did not discuss in their opening brief: (1) that Civil Code section 1714.7 is unconstitutional as applied, and (2) that a comparative standard of review (between the traditional and strict scrutiny standards) should be applied. Since these are raised for the first time in appellant's closing brief, we decline to discuss them.

[3] Civil Code section 1714.7 provides as follows: "No person who is injured while getting on, or attempting to get on, a moving locomotive or railroad car, without authority from the owner or operator of the railroad, or who, having gotten on a locomotive or railroad car while in motion without such authority, is injured while so riding or getting off, shall recover any damages from the owner or operator thereof for such injuries unless

a. *The Equal Protection Clause.*

Appellants contend that Civil Code section 1714.7 is unconstitutional under the equal protection clause, under the privileges and immunities clause, and as a special statute. ■ Appellants argue under the equal protection rubric that there is no reasonable and substantial relationship between the classification in the statute and any legitimate state interest, that the statute does not treat those similarly situated alike, that the basis of classification is arbitrary and unreasonable, and the statute invidiously discriminates.

■ Under the "traditional" standard of review for equal protection classifications, the court must merely find that the classification bears some rational relationship to a conceivable legitimate state purpose. (*Cooper* v. *Bray,* 21 Cal.3d 841, 847-848 [148 Cal.Rptr. 148, 582 P.2d 604].)[4] ■ Furthermore, "the burden of demonstrating the invalidity of a classification under this standard rests squarely upon *the party who assails it.* [Citations.]" (*D'Amico* v. *Board of Medical Examiners,* 11 Cal.3d 1, 17 [112 Cal.Rptr. 786, 520 P.2d 10].) We also note "All presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity. Statutes must be upheld unless their unconstitutionality clearly, positively and unmistakably appears. [Citation.]" (*Russell* v. *Carleson,* 36 Cal.App.3d 334, 342 [111 Cal.Rptr. 497].)

■ Respondent argues that the Legislature had a legitimate and realistically conceivable purpose in enacting Civil Code section 1714.7, namely, insuring that common carriers are not exposed to unnecessary, onerous, and unduly burdensome expenses. Respondent argues that section 1714.7 is merely an enactment of the common law rule (see, e.g., *Smith* v. *Southern Pacific Co.,* 222 Cal.App.2d 728 [35 Cal.Rptr. 575]; *Joslin* v. *Southern Pac. Co.,* 189 Cal.App.2d 382 [11 Cal.Rptr. 267]; *Herrera* v. *Southern Pacific Ry. Co.,* 188 Cal.App.2d 441 [10 Cal.Rptr.

---

proximately caused by an intentional act of such owner or operator with knowledge that serious injury is the probable result of such act, or with a wanton and reckless disregard of the probable result of such act."

[4]Appellants argue that the right to recover damages is a fundamental right under the California Constitution and that, therefore, the " 'strict scrutiny' " test must be applied and the state must show a compelling state interest in order to justify the classification. However, the Supreme Court has rejected the contention that the right to sue for negligently inflicted injuries is a " 'fundamental interest' " analogous to voting rights or education. (*Brown* v. *Merlo,* 8 Cal.3d 855, 862 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505], fn. 2.)

575]; and *Gutierrez* v. *Southern Pacific Co.,* 174 Cal.App.2d 866 [345 P.2d 326]) and a reaction to the holding of *Beard* v. *Atchison, Topeka & Santa Fe Ry. Co.,* 4 Cal.App.3d 129 [84 Cal.Rptr. 449].[5]

The concept of a statutory exception to the general liability of Civil Code section 1714 has been approved. (See *English* v. *Marin Mun. Water Dist.,* 66 Cal.App.3d 725, 729-730 [136 Cal.Rptr. 224]; *Lostritto* v. *Southern Pac. Transportation Co.,* 73 Cal.App.3d 737, 746-749 [140 Cal.Rptr. 905].) The purpose of section 1714.7, like that of Civil Code section 846, is reasonable, especially in light of Penal Code section 587b which makes train jumping a misdemeanor.

■ The question still remains, even if the Legislature has the power to exempt railroads from liability in some cases, can it distinguish between those who have authority to be on a moving car and those who do not have such authority. Appellants also argue that the statute unconstitutionally distinguishes between trespassers to a railroad locomotive and trespassers to other forms of transportation such as boats, planes, buses, cars, and so forth; an additional challenge is made to the distinction between different subclasses of railroad vehicle trespassers, that is, those who get on while the locomotive is at rest rather than while it is moving.

While in light of *Rowland* v. *Christian,* 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], this court disparaged the distinction between trespassers and invitees in *Beard* v. *Atchison, Topeka & Santa Fe Ry. Co., supra,* 4 Cal.App.3d 129, 136, subsequent cases have upheld a specific statutory limitation on liability even in light of *Rowland* v. *Christian, supra.* (*English* v. *Marin Mun. Water Dist., supra,* 66 Cal.App.3d 725, *Lostritto* v. *Southern Pac. Transportation Co., supra,* 73 Cal.App.3d 737.) Civil Code section 846, examined in *English* and *Lostritto, supra,* recognizes that negligence liability may exist where the user of the land has been expressly invited rather than merely permitted to enter the premises, but otherwise requires willful or malicious failure to guard or warn against a hazard or payment for entry by the injured user. Based on these cases, we find the distinction between those who have authority to use the railway and those who do not in Civil Code section 1714.7 to be constitutionally permissible.

---

[5]The case at bench is distinguishable from *Beard, supra,* in that appellant Durham had been told of the danger of hopping trains. The subsequent case of *Li* v. *Yellow Cab Co.,* 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], which is a post-*Beard* case, adopted the rule of comparative negligence and minimizes the doctrine of assumption of the risk on which *Beard* relies.

As for the distinction between railroad trespassers and other vehicular trespassers, there are obvious distinctions between railroads and other forms of transportation. "Dwellings flank hundreds of miles of right-of-way in California and the sight of children playing on a right-of-way is not uncommon. To hold that railways must install child-proof fences or to police the right-of-way in order to prevent children from being attracted to moving trains, would place an unreasonable if not an intolerable burden upon the possessor maintaining the condition." (*Joslin* v. *Southern Pac. Co., supra,* 189 Cal.App.2d 382, 388.) The hopping of trains has been recognized as "a part of the spice of adventure" in which a substantial proportion of boys and young men (and perhaps today young women?) participate. (*Herrera, supra,* 188 Cal.App.2d at p. 450.) The Legislature has in effect made a determination that the railroad should not be liable for injuries in such circumstances unless the injuries have been caused by the intentional, wanton, or reckless acts of the operator.

As for the distinction between those who get aboard a moving train and those who board a stationary train and are thereafter injured, the classification is very reasonable. As asserted by respondent, the numerous qualifications in the statute are designed to insure that the statute applies only in situations where the burden to the railroad is unduly heavy.[6] The railroad can more easily monitor trains that are at rest in order to prevent train jumping. Underinclusion, if not irrational, is not by itself unconstitutional. (*Lostritto, supra,* 73 Cal.App.3d at pp. 747-748.)

### b. *The privileges and immunities clause of the California Constitution.*

■ Appellants next contend that Civil Code section 1714.7 is unconstitutional as a violation of the privileges and immunities clause of the California Constitution (art. I, § 7, formerly art. I, § 21) in that no comparable immunity has been granted to any other private entity.

Article I, section 7, subdivision (b), provides: "A citizen or class of citizens may not be granted privileges or immunities not granted on the same terms to all citizens. . . ." The cases decided under former article I, section 21, of the California Constitution regarding privileges and immunities establish that the classifications under that section, like the equal protection clause and the prohibitions against special legislation, are valid unless the classification is unreasonable or arbitrary. (*County of*

---

[6] In the case at bench, for example, the crew of the train was often pelted with rocks when driving through this particular area. Therefore, they would at times drop to the floor, a reasonable action in face of danger, which would not allow them to look at the track in any way.

*L.A.* v. *Southern Cal. Tel. Co.,* 32 Cal.2d 378 [196 P.2d 773], app. dism., 336 U.S. 929 [93 L.Ed. 1090, 69 S.Ct. 737].) Privileges for various groups have long been upheld as long as there is a rational basis for the classifications. (*Cook* v. *Mason,* 103. Cal.App. 6, 9-10 [283 P. 891], regarding veterans' preferences.) As discussed above, we find the classifications in Civil Code section 1714.7 to be reasonable.

### c. *A special statute.*

Article IV, section 16, of the California Constitution provides: "(a) All laws of a general nature have uniform operation. (b) A local or special statute is invalid in any case if a general statute can be made applicable." Appellants contend that section 1714.7 is unconstitutional as a special statute. ■ Article IV, section 16, like the clauses discussed above, is "substantially the equivalent of the equal protection clause of the Fourteenth Amendment, and evoke[s] substantially the same standards as those prescribed by the federal Constitution. [Citations.]" (*Russell* v. *Carleson, supra,* 36 Cal.App.3d at p. 342.) Again, we cannot find section 1714.7 to be unconstitutional.

### 2. *The jury instructions were neither conflicting nor prejudicial..*

■ Appellants contend that the combination of instructions of comparative negligence and the modified instruction regarding Civil Code section 1714.7 were conflicting and contradictory and resulted in a miscarriage of justice. We disagree. If the jury believed appellant's story that he was throwing rocks at the train, his arm was grabbed, and he thereby fell under the train, the comparative negligence instructions were applicable. Otherwise, if the jury believed, as it apparently did, that appellant Darren Durham was attempting to hop the train when he fell, the instruction based on Civil Code section 1714.7 applied. The jury instructions were correct, complete, and not contradictory.

### 3. *The nonsuit was properly granted in favor of respondent City of Los Angeles.*

Appellants allege the City of Los Angeles "negligently maintained and controlled a crosswalk at the location of the accident in the City of Los Angeles, which crosswalk ends at the Southern Pacific Railway easement and which crosswalk has no present purpose or use and is maintained negligently and without reasonable regard to the danger to local inhabitants. That the said crosswalk negligently leads to and across the railroad track and that the danger to local inhabitants is reasonably

foreseeable. Said negligent and unreasonable conduct . . . was among the proximate causes of the injuries and damages sustained by plaintiffs herein." The court ordered a judgment of nonsuit in favor of the City of Los Angeles. Appellants now contend that the nonsuit was improper since the jury could reasonably infer that a dangerous condition existed on city property. Appellants argue that the municipality should have given appropriate warning or erected and maintained suitable barriers since it had knowledge of the existence of the dangerous condition (the train) adjacent to its property.

"At the outset it must be remembered that a nonsuit may be granted '. . . "only when, disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff if such a verdict were given." ' [Citation.] Thus, 'while in most appeals it is the duty of the reviewing court to indulge every reasonable intendment in favor of sustaining the trial court, substantially the reverse is true when the appeal is from an order of nonsuit. In the latter case the appellate court must view the evidence as though judgment had gone in favor of the appellant, and order a reversal if such a judgment can be sustained.' [Citation.]" (*Meyer* v. *Blackman,* 59 Cal.2d 668, 671-672 [31 Cal.Rptr. 36, 381 P.2d 916].)

Government Code section 835 sets forth the liability of a public entity for injury caused by a dangerous condition of its property.[7] "Dangerous condition" is defined in Government Code section 830 as "a condition of property that creates a substantial (as distinguished from a minor, trivial, or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used."

---

[7]Government Code section 835 reads as follows: "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:

"(a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition: or

"(b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

The Law Revision Commission comment to section 830 of the Government Code provides in part: "A condition is not dangerous within the meaning of this chapter unless it creates a hazard to those who foreseeably will use the property or adjacent property *with due care.* Thus, even though it is foreseeable that persons may use public property without due care, a public entity may not be held liable for failing to take precautions to protect such persons. The definition would, however, take into consideration the standard of care that would be applicable to foreseeable users of the property. Where it is reasonably foreseeable that persons to whom a lower standard of care is applicable—such as children—may be exposed to a substantial risk of injury from the property, the public entity should be required to take reasonable precautions to protect such persons from that risk."[8] (Italics added.)

We find the factual situation in the case at bench to be more similar to that in *Avey* v. *County of Santa Clara,* 257 Cal.App.2d 708 [65 Cal.Rptr. 181], than that in *Holmes* v. *City of Oakland,* 260 Cal.App.2d 378 [67 Cal.Rptr. 197]. In *Holmes, supra,* 260 Cal.App.2d at page 381, the six-year-old victim was run over by a train while a pedestrian on a city street in Oakland; the railroad tracks were actually located on the street in close proximity to a grammar school. The graveled portion of the railroad right-of-way in the case at bench where Darren was standing when either hopping the train or sucked into it, is analogous to the island in *Avey, supra,* 257 Cal.App.2d at page 710. ▆▆ The city's property in the case at bench was in no way defective and could not be considered dangerous except in relation to the railroad tracks. As in *Avey, supra,* 257 Cal.App.2d at page 713, we find no duty on the political entity to erect some sort of barricade in order to maintain its street in a reasonably safe condition. Neither must the city provide supervision at that location.

▆▆ As for appellants' contention that the city did not even post a sign to deter pedestrians from passing across the crosswalk into the graveled portion while waiting for a train to pass, the lack of regulatory traffic control signals does not produce a dangerous condition. (Gov. Code, § 830.4.) ▆▆ Furthermore, Darren's mother had told him to stay away from trains; his friend had warned him not to hop the train; he had heard the train's horn and had obviously seen the train since he was throwing rocks at it by his own admission. We cannot say that lack of

---

[8]We may consider such comments in construing the statute. (*Van Arsdale* v. *Hollinger,* 68 Cal.2d 245, 249 [66 Cal.Rptr. 20, 437 P.2d 508].)

warning by the city was in any way a proximate cause of Darren's accident.

The judgment for Southern Pacific Transportation Company and the judgment of nonsuit for the city are affirmed.

Roth, P. J., and Fleming, J., concurred.

A petition for a rehearing was denied March 29, 1979, and appellants' petition for a hearing by the Supreme Court was denied May 30, 1979.