94 Cal.App.3d 895 (1979)
157 Cal. Rptr. 90
JAMES MONROE DARR, Plaintiff and Appellant,
v.
LONE STAR INDUSTRIES, INC., Defendant and Respondent.
Docket No. 17415.
Court of Appeals of California, Third District.
July 11, 1979.
*897 COUNSEL
Jones, Lamb, Jarboe & Boli, Michael S. Jarboe, Marvin C. Marx and Lawrence J. Hannan, Jr., for Plaintiff and Appellant.
Hardy, Erich & Brown, Van Longyear and John Quincy Brown, Jr., for Defendant and Respondent.
OPINION
REYNOSO, J.
This appeal follows a judgment dismissing plaintiff's personal injury action entered upon an order granting defendant's motion for nonsuit.
Plaintiff sustained injury when he dove into the American River from a low level bridge located a short distance downstream from the public bridge crossing at Sunrise Boulevard in Sacramento County. As a result of the dive, plaintiff suffers partial permanent paralysis. Following the accident, plaintiff filed a complaint for damages.[1] At the close of plaintiff's case, defendant filed a motion for nonsuit based on Civil Code section 846, which effectively relieves an "owner of any estate in real *898 property" of liability for injuries resulting from certain recreational activities, including water sports.[2] The trial court granted the motion.
(1a) We have determined that, as a matter of law, defendant's interest in the bridge from which plaintiff dove and was injured did not amount to an "ownership of any estate in real property" within the meaning of Civil Code section 846. Consequently, defendant cannot invoke the protection of the statute. We reverse the order granting a nonsuit and remand the matter for further proceedings.

I
The following recitation of facts serves as useful background. At the time of the accident, defendant was aware that steel culverts and pilings, placed in the river by its predecessor in interest, Pacific Cement Aggregate, Inc. (hereinafter PCA), resided beneath the surface of water below the bridge. Defendant was also aware that people commonly dove from the bridge. Indeed, from 1965 until the time of the accident, PCA, and later defendant, employed various precautionary measures to prevent the public's vehicular and pedestrian use of the bridge. Defendant and its predecessor posted "No Trespassing" signs, erected cable barriers at the end of the bridge, and employed guards during hauling periods. However, defendant made no attempt to warn the public of the specific danger posed by the submerged culverts and pilings.
*899 Relevant to the issue which we find dispositive are these additional facts. The bridge in question was used by defendant to haul gravel from one side of the river to the other. The property upon which the bridge was built, the bed of the American River, is owned by the State of California. In 1965, Natomas Company (hereinafter Natomas), owner of the property from which the gravel was hauled, obtained a "Right of Entry Permit" from the State Lands Commission. This document conveyed a right-of-way to Natomas to permit its access over the river at the place of the future bridge site. Subsequently, defendant asserts, Natomas granted PCA the right to enter its property to remove gravel.[3] PCA then constructed the bridge, apparently pursuant to its agreement with Natomas, in an effort to facilitate its gravel operation. Prior to the accident, defendant succeeded to PCA's interests, including whatever right of entry PCA had acquired from Natomas. Defendant remained in control of the bridge until September 10, 1974, when it quitclaimed its rights and interests in the bridge to the County of Sacramento.

II
(2) A motion for nonsuit is the equivalent of a demurrer to evidence or motion for a directed verdict. (Code Civ. Proc., § 581c; e.g., Estate of Easton (1931) 118 Cal. App. 659, 662 [5 P.2d 635]; Bush v. Wood (1908) 8 Cal. App. 647 [97 P. 709].) The trial court indulges in every legitimate evidentiary inference in favor of the party against whom the motion is directed and may grant the order only if, as a matter of law, such a reading of the facts do not sustain that party's case. (E.g., Estate of Lances (1932) 216 Cal. 397, 400 [14 P.2d 768].) Thus, we shall examine the viability of plaintiff's claim that defendant's interest in the real property at issue did not constitute ownership of any estate in real property.
(3) The type of property interest granted Natomas from the State Lands Commission is of primary importance in this case: Defendant could not have succeeded to a property interest more expansive than what PCA had acquired from Natomas. Therefore, we scrutinize the state document granting the right of entry permit to Natomas to ascertain the nature of the interest conveyed: The document expressly permits a right of entry upon a strip of sovereign land in the bed of the American River. It further describes Natomas' interest in the riverbed as "a right of way *900 easement with standard terms and conditions." (Emphasis supplied.) Natomas has an easement in the riverbed. The bridge was constructed to perfect that interest. In accordance with the accepted definition of an easement, Natomas' interest is in the land of another (the state), and defendant as owner of the interest is entitled to a limited use (bridge crossing) of the other's land. (Goble v. Dotson (1962) 203 Cal. App.2d 272, 277 [21 Cal. Rptr. 769]; Zlozower v. Lindenbaum (1929) 100 Cal. App. 766, 770 [281 P. 102]; Rest., Property (1944) § 450, com. (a).) Put simply, because the state granted a right of way over its property in the riverbed, it transferred an easement. (Marin County Hospital Dist. v. Cicurel (1957) 154 Cal. App.2d 294 [316 P.2d 32]; Moakley v. Los Angeles Pacific Ry. Co. (1934) 139 Cal. App.2d 421 [34 P.2d 218].) In circumstances such as these, in which an entity obtains a right of way over state waterbeds, our Supreme Court defines the nature of the property interest acquired as follows: "[B]efore a bridge can be constructed over [state lands underlying navigable waters] an easement must be secured from the state." (Italics added.) (Southlands Co. v. City of San Diego (1931) 211 Cal. 646, 664 [297 P. 521].)
(4) The document did not transfer a leasehold to Natomas. A leasehold vests exclusive possession of the property to the lessee, even against the owner of the fee (Von Goerlitz v. Turner (1944) 65 Cal. App.2d 425, 429 [150 P.2d 278]) and is based on a privity of estate between lessor and lessee. (See Ellingson v. Walsh, O'Connor & Barneson (1940) 15 Cal.2d 673 [104 P.2d 507]; Samuels v. Ottinger (1915) 169 Cal. 209 [146 P. 683]; 1 Bowman, Ogden's Revised Cal. Real Property Law (Cont.Ed.Bar 1974) p. 491.) By contrast, the interest acquired by Natomas did not divest the state of its possession in the riverbed. Nor does the use of the words "leased for two years" in the state document transform Natomas' interest into a leasehold. An easement may be conveyed for any length of duration. The term "lease" in this context, like the terms "fee simple absolute" or "fee simple defeasible" merely describes the length in duration of the interest conveyed. It does not describe the nature or quality of the interest conveyed. (See Callahan v. Martin (1935) 3 Cal.2d 110 [43 P.2d 788, 101 A.L.R. 871]; Renden v. Geneva Development Corp. (1967) 253 Cal. App.2d 578 [61 Cal. Rptr. 463]; Irvin v. Petitfils (1941) 44 Cal. App.2d 496 [112 P.2d 688].)
(5) Defendant agrees that Natomas was granted an easement. But it misconstrues the law when it maintains that because an easement is an interest in real property, it necessarily constitutes an estate in real *901 property.[4] An interest in land is not presumptively an estate in land: the term estate is confined to those interests in land which are or may become possessory. (E.g., Rest., Property (1936) § 9; Bowman, supra, at pp. 25-26; 2 Powell on Real Property (1977) Estates, ch. 12, § 172.) The California Civil Code, for example, lists four types of estates in real property, all of them possessory interests.[5] Defendant correctly notes that an easement is an interest in real property. (See 3 Witkin, Summary of Cal. Law (8th ed. 1973) Real Property, § 341, pp. 2041-2042.) However, they fail to note that an easement is a nonpossessory interest in real property. (Elliott v. McCombs (1941) 17 Cal.2d 23 [109 P.2d 329].) Indeed, that an easement involves use of another's land evidences its nonpossessory character. As such, it cannot be an estate in real property. (See 3 Witkin, supra, Real Property, § 340; Rest. of Property, supra, § 450, com. (a).) Powell states the rule succinctly: "While an easement is clearly an `interest in land' ... it is equally clearly never an `estate in land.'" (3 Powell, supra, Easements and Licenses, ch. 34, § 405.)
(1b) We conclude that, as a matter of law, any interest that defendant could have had in the right-of-way over the riverbed was nonpossessory, hence, could not have constituted an estate in real property. Thus, the motion for nonsuit based on section 846 was improperly granted.
We reverse the order granting the nonsuit and remand for further proceedings consistent with this opinion.
Puglia, P.J., concurred.
EVANS, J.
I dissent.
The majority conclude that a "right of entry" or easement granted by the State of California upon which a bridge over the American River was *902 constructed by the permittee or holder of the easement is not an "estate in real property" as envisioned by Civil Code section 846. It is my conviction that under the law of this state, they are wrong. They narrowly interpret the phrase "owner of any estate in real property" in the manner suggested by the injured plaintiff. Plaintiff and the majority seem to suggest that the phrase is defined by Civil Code section 761.[1] Again, I conclude to the contrary. The section is not definitive of the word "estate." It is merely the description of four general types of estates in the context of their duration.[2]
For example, it has been held that under section 761, a lease of tidelands from the state is an interest in real property and an "estate for years" just as an ordinary leasehold is an "estate in land." (San Pedro etc. R.R. Co. v. Los Angeles (1919) 180 Cal. 18, 20-21 [179 P. 393]; Parker v. Superior Court (1970) 9 Cal. App.3d 397, 400 [88 Cal. Rptr. 352].) In this connection, I note that the document by which the state granted Natomas Company (defendant's predecessor) the right to cross the American River refers to Natomas as a "Lessee or Permittee." Moreover, inasmuch as a right of entry given under contract to enter upon land to cut and remove timber is an "estate or interest" in land (Kirsch v. Barnes (N.D.Cal. 1957) 157 F. Supp. 671, 673), so must a right of entry or easement to permit construction and use of a bridge.
The Legislature is presumed, when it enacts a statute, to be aware of the case law of the estate. (See 45 Cal.Jur.2d, Statutes, § 101, pp. 615-616.) Accordingly, when section 846 was adopted and subsequently amended, had the Legislature desired to limit or change the accepted meaning of "estate" in real property, it could have expressly done so.
To restrict the application of section 846 in this instance will result in inequitable treatment of owners of private bridges over waterways which are accessible to trespassers. The majority would eliminate from the purview of section 846, the owner of a bridge accessible for water sports by trespassers simply because that owner does not own the fee of the underlying waterway. The anomalous situation thus arises that the owner who grants the easement is protected by section 846 while the owner of *903 the structure over the waterway within the easement which is used for recreational purposes is not. Elimination from the protection of the section is accomplished by an assumption that an easement over the river upon which a bridge is built is not an "estate in real property."
An examination of the express language of the section in the context of Civil Code, title 3, chapter 2, section 840 et seq., is helpful in pointing out the error in the majority conclusion. Section 846 commences "An owner of any estate in real property...." (Italics added.) I emphasize the legislative use of the term "any estate." Had the Legislature intended a restricted definition of "estate," it could have simply done so. It did not. Section 845 deals with owners of easements, and indicates the Legislature's use of the word "estate" to be an all encompassing word of art, including an "owner of any easement."
The Legislature adopted section 846 in 1963, and amended it in 1970, 1971, 1972, 1976, and 1978, for clarification and to include protection against damage resulting from recreational use of the property by trespassers as well as invitees. The amendments to section 846 are indicative of the legislative policy to reduce the tendency by landowners to remove their real property from potential recreational access by eliminating the risk of gratuitous tort liability that the owner might experience unless he successfully bars entry to his property for the enumerated recreational uses. Since adoption of the section, the Legislature had broadened the scope of the immunities created by the section and is a beacon light indicative of its intention to create an exception in favor of the owner of any estate, be it fee or a right of passage over the land or waterway by way of easement against liability imposed by Civil Code section 1714.[3] (See English v. Marin Mun. Water Dist. (1977) 66 Cal. App.3d 725, 731 [136 Cal. Rptr. 224].)
The inequity resulting from the majority result is vividly presented by the decision in Lostritto v. Southern Pac. Transportation Co. (1977) 73 Cal. App.3d 737 [140 Cal. Rptr. 905]. In that case, not unlike this, a 16-year-old trespasser dove from the defendant railroad trestle bridge into the streambed of the San Lorenzo River. His neck was broken rendering him quadriplegic. The court held that section 846 precluded a damage award against the railroad pursuant to Civil Code section 1714. I find it inconsequential that the railroad owned the underlying streambed *904 as well as the bridge in order to entitle the owner to the protection of section 846. I do not believe the Legislature intended an exclusion from the protection of the section for failure to "own the riverbed" in a situation resulting in injury to one using a private bridge over the American River for recreational purposes. The right of entry granted by the state in the first instance which permits construction of a bridge over the underlying fee has equal dignity with a document utilizing the language easement. In each instance an "estate in real property" is granted. (Parker v. Superior Court, supra, 9 Cal. App.3d at p. 400.)
As I construe section 846, the defendant was the owner "of an estate in real property" and was entitled to the immunity afforded by that section. (Cf. Lostritto v. Southern Pac. Transportation Co., supra, 73 Cal. App.3d at p. 746.)
I would affirm the judgment.
A petition for a rehearing was denied August 8, 1979. Evans, Acting P.J., was of the opinion that the petition should be granted. Respondent's petition for a hearing by the Supreme Court was denied September 6, 1979.
NOTES
[1] Plaintiff's original complaint named Lone Star Industries, Inc., Pacific Cement Aggregate, Inc., and Sacramento County as defendants. By stipulation, the parties agreed that Lone Star Industries, Inc., was the successor in interest to Pacific Cement Aggregate, Inc. Subsequently, plaintiff dismissed his action against the county and went to trial against Lone Star Industries, Inc., alone.
[2] At the time of the accident, Civil Code section 846 provided in its entirety: "An owner of any estate in real property owes no duty of care to keep the premises safe for entry or use by others for fishing hunting, camping, water sports, hiking, riding, including animal and all types of vehicular riding, rock collecting, or sightseeing or to give any warning of hazardous conditions, uses of, structures, or activities on such premises to persons entering for such purposes, except as provided in this section.

"An owner of any estate in real property who gives permission to another for entry or use for the above purposes upon the premises does not thereby (a) extend any assurance that the premises are safe for such purposes, or (b) constitute the person to whom permission has been granted the legal status of an invitee or licensee to whom a duty of care is owed, or (c) assume responsibility for or incur liability for any injury to person or property caused by any act of such person to whom permission has been granted except as provided in this section.
"This section does not limit the liability which otherwise exists (a) for willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity; or (b) for injury suffered in any case where permission to enter for the above purposes was granted for a consideration other than the consideration, if any, paid to said landowner by the state; or (c) to any persons who are expressly invited rather than merely permitted to come upon the premises by the landowner.
"Nothing in this section creates a duty of care or ground of liability for injury to person or property." Subsequent to the time of the accident that section has twice been amended, first in 1976 and later in 1978. The amendments are not relevant herein.
[3] Plaintiff contends that Natomas' right-of-way could not be transferred absent the approval of the state. Plaintiff urged strenuously at oral argument that PCA acquired no interest from Natomas. We need not decide that issue; however, our resolution assumes such transferability for purposes of this opinion.
[4] Plaintiff maintains that defendant had a profit a prendre, and cites authority that such an interest constitutes an estate in real property. Assuming what plaintiff asserts to be true, defendant would have an estate only in the gravel that the profit entitled him to extract, not an estate in the riverbed itself. The focus of our concern vis-a-vis section 846  the bridge of access to defendant's supposed estate  would remain an easement. (See 3 Powell, supra, Easements and Licenses, ch. 34, § 405.)
[5] Civil Code section 761 reads as follows:

"Estates in real property, in respect to the duration of their enjoyment, are either:
"1. Estates of inheritance or perpetual estates;
"2. Estates for life;
"3. Estates for years; or,
"4. Estates at will."
[1] Civil Code section 761 reads as follows: "Estates in real property, in respect to the duration of their enjoyment, are either:

"1. Estates of inheritance or perpetual estates;
"2. Estates for life;
"3. Estates for years; or,
"4. Estates at will."
[2] It is elementary lexicography that one does not define a word by use of the word itself.
[3] Civil Code section 1714 provides in part: "(a) Everyone is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, ..."