[No. A043477. First Dist., Div. One. Jan 22, 1990.]

OSCAR RIVERA, Plaintiff and Appellant, v.
SOUTHERN PACIFIC TRANSPORTATION COMPANY,
Defendant and Respondent.

**COUNSEL**

Oscar Rivera, in pro. per., for Plaintiff and Appellant.

Corrigan & Fil and Morris, Polich & Purdy for Defendant and Respondent.

**OPINION**

**STEIN, J.**—Oscar Rivera filed against Southern Pacific Railroad and related parties (hereafter Southern Pacific) a complaint for compensatory damages. The complaint alleged that Rivera suffered permanent and disabling injuries when he fell from a train in Southern Pacific's railroad yard located in Yuma, Arizona.

Southern Pacific moved for summary judgment on the grounds that the action was precluded by California Civil Code section 1714.7, the so-called "train hopping statute." The superior court granted the motion and ordered summary judgment entered. Rivera appeals from the order entering summary judgment.

### Appeal From Order for Entry of Summary Judgment

An order granting a motion for summary judgment is not an appealable order. Where, as here, judgment has in fact been entered, this court is empowered to honor the appeal as one taken from the judgment itself. (*Crookham* v. *Smith* (1977) 68 Cal.App.3d 773, 775, fn. 1 [137 Cal.Rptr. 428]; *Artucovich* v. *Arizmendiz* (1967) 256 Cal.App.2d 130 [63 Cal.Rptr. 810].) We shall do so.

### Facts

The relevant facts are taken from Rivera's deposition. Rivera and others were in the habit of traveling from Yuma, Arizona to Los Angeles by hiding

underneath automobiles carried on train cars. On the night in question, Rivera had consumed approximately one and one-half bottles of wine and had taken three "neo percodan" prior to going to the railroad yard. He asked a man who was switching cars from one track to another which track would carry the train to Los Angeles. The man indicated that the train would be on the last track and would be there within five or ten minutes. Rivera hid in some bushes and, when the train approached, climbed onto a slowly moving car. He slipped from the car and was pulled under it when he tried to push himself up by standing on one of the wheels. He lost both legs.

### Application of California Law

The injuries occurred in Arizona. Rivera, however, alleging that he was at all times relevant a California citizen, brought the action in California. ▮ The relevant rules are stated in *Offshore Rental Co.* v. *Continental Oil Co.* (1978) 22 Cal.3d 157 [148 Cal.Rptr. 867, 583 P.2d 721]: "Questions of choice of law are determined in California, . . . by the 'governmental interest analysis . . . .' [which requires the forum to] '. . . search to find the proper law to apply based upon the interests of the litigants and the involved states.'" (*Id.* at p. 161.) ▮ "As we pointed out in our decision in *Hurtado* v. *Superior Court* (1974) 11 Cal.3d 574 [114 Cal.Rptr. 106, 522 P.2d 666], however, the fact that two states are involved does not in itself indicate that there is a 'conflict of laws' or 'choice of laws' problem. As we stated in *Hurtado,* '[t]here is obviously no problem where the laws of the two states are identical.' (11 Cal.3d at p. 580.)" (*Id.* at pp. 161-162.)

Civil Code section 1714.7 provides, "No person who is injured while getting on, or attempting to get on, a moving locomotive or railroad car, without authority from the owner or operator of the railroad, or who, having gotten on a locomotive or railroad car while in motion without such authority, is injured while so riding or getting off, shall recover any damages from the owner or operator thereof for such injuries unless proximately caused by an intentional act of such owner or operator with knowledge that serious injury is the probable result of such act, or with a wanton and reckless disregard of the probable result of such act."

Arizona has no comparable statute. Its case law, however, has established that a railroad owes no duty to a trespasser "except not to wilfully or wantonly injure him after discovering his peril." (*Barry* v. *Southern Pac. Co.* (1946) 64 Ariz. 116 [166 P.2d 825, 828].) A trespasser is defined as "'a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise.'" (*Ibid.*) A comparison of Civil Code section 1714.7 with Arizona common law demonstrates the law of the two states to be reasonably identical.

Accordingly, there is no true conflict of law and California, as the forum state, is entitled to apply its own law.

*Effect of Civil Code Section 1714.7 on Rivera's Claim*

Rivera opposed the motion for summary judgment on the grounds (1) that he had not boarded a *moving* train and (2) that he had been authorized by Southern Pacific to board the train.

Rivera's first argument was based on an answer to interrogatories filed several months after his deposition. In his answer, contradicting his deposition testimony that the train was moving as he boarded, he stated, "At the time that I climbed aboard the train the locomotive engine was running. However, the train was not actually moving at that instant. Both immediately before and immediately after I climbed on the train, the train did move very slowly backwards and forwards."

■ We find that the trial court properly determined there was no issue of fact as to whether the train was stationary when boarded by Rivera.

In his deposition, appellant admitted that at the time he boarded the train it was moving. This admission raised the bar of Civil Code section 1714.7. Where a party makes an admission or concession during discovery, the trial court is entitled to find no triable issue as to the fact conceded. "As the law recognizes in other contexts (see Evid. Code, §§ 1220-1230) admissions against interest have a very high credibility value. This is especially true when, as in this case, the admission is obtained not in the normal course of human activities and affairs but in the context of an established pretrial procedure whose purpose is to elicit facts. Accordingly, when such an admission becomes relevant to the determination, on motion for summary judgment, of whether or not there exist triable issues of *fact* (as opposed to legal issues) between the parties, it is entitled to and should receive a kind of deference not normally accorded evidentiary allegations in affidavits." (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 22 [112 Cal.Rptr. 786, 520 P.2d 10], italics in original.)

In his subsequent answers to interrogatories, appellant stated that the train was moving both immediately before and after he boarded it, but was not actually moving at the instant he boarded. The issue thus presented is whether a party can rely on contradictions in his own testimony to create a triable issue of fact and thereby defeat a summary judgment motion. When the defendant can establish an absolute defense from the plaintiff's admissions, "the credibility of the admissions are valued so highly that the controverting affidavits may be disregarded as irrelevant, inadmissible or

evasive." (*Leasman* v. *Beech Aircraft Corp.* (1975) 48 Cal.App.3d 376, 382 [121 Cal.Rptr. 768]; quoted with approval in *State Farm Mut. Auto. Ins. Co.* v. *Eastman* (1984) 158 Cal.App.3d 562, 573 [204 Cal.Rptr. 827].) "Thus, in *King* v. *Andersen* [1966] 242 Cal.App.2d 606 [51 Cal.Rptr. 561], the rule providing for liberal construction of counteraffidavits was held not to require reversal of a summary judgment for defendants where the plaintiff in an assault case, although having stated in his counteraffidavit that unnecessary force was used, nevertheless had stated in a previous deposition that no force was used; refusing to find that a triable issue was thus presented, the court said: 'Where, as here, however, there is a clear and unequivocal admission by the plaintiff, himself, in his deposition . . . we are forced to conclude there is no *substantial* evidence of the existence of a triable issue of fact.' (242 Cal.App.2d at p. 610.)" (*D'Amico* v. *Board of Medical Examiners, supra*, 11 Cal.3d at 21, italics in original.) "[T]he credibility of the parties is held up for examination by the contradicting statements, the first of which constitutes a reliable admission against interest. The trial court may accept the first and reject the later of these contrary positions." (*Gray* v. *Reeves* (1977) 76 Cal.App.3d 567, 574 [142 Cal.Rptr. 716].)

Thus, the conflict in appellant's statements is insufficient to constitute evidence substantial enough to create a triable issue of fact because his credibility had been destroyed by the prior admission. (*Hoover Community Hotel Development Corp.* v. *Thomson* (1985) 167 Cal.App.3d 1130, 1141 [213 Cal.Rptr. 750].)

█ Moreover, appellant's answers to the interrogatories did not raise a triable issue of fact sufficient to defeat respondent's motion for summary judgment. Appellant seeks to exclude from the application of Civil Code section 1714.7 injuries incurred while hopping trains which have momentarily stopped. Reading the statute in light of Penal Code section 587b, which makes train hopping a misdemeanor, it is evident that the purpose of the statute is to prevent liability where the railroad company is not easily able to ascertain if unauthorized persons have boarded the train. (See *Durham* v. *City of Los Angeles* (1979) 91 Cal.App.3d 567, 574 [154 Cal.Rptr. 243].) Ascertainment is easier if the train is in fact stationary; i.e., an inspection can be made before the train begins its journey. There would be little reason to distinguish between a moving and a pausing train, as a pause would not be long enough to permit an inspection for riders.

Our reading of the statute is in accord with the common law rule against liability for train hopping. "Here the danger was obvious, that of moving railroad trains. No adult in possession of his faculties could claim nondiscovery of the danger or nonrealization of the unreasonable risk which entering the area, or intermeddling, would entail." (*Gutirrez* v. *Southern*

*Pacific Co.* (1959) 174 Cal.App.2d 866, 869 [345 P.2d 326].) "Nothing could be more pregnant with warning of danger than the noise and appearance of a huge, rumbling, string of railroad cars." (*Herrera* v. *Southern Pacific Ry. Co.* (1961) 188 Cal.App.2d 441, 449 [10 Cal.Rptr. 575].) "The dangers of being near a moving train, let alone attempting to board it, are so patent that we shall not burden this opinion with a discussion of them." (*Joslin* v. *Southern Pac. Co.* (1961) 189 Cal.App.2d 382, 386 [11 Cal.Rptr. 267].)

■ Further, there is nothing in the conversation between Rivera and the man switching trains to support Rivera's argument that he authorized Rivera to board the train. The man simply told him which track it would be on. Authorization is not the same as noninterference. Moreover, Civil Code section 1714.7 specifies that authorization may be given only by the owner or operator of the train. The switchman clearly was neither the actual owner nor the operator of the railroad. His ability to authorize Rivera's act, therefore, depends upon whether or not he might be characterized as Southern Pacific's agent. An agency relation results "from the act of one person, the principal, who authorizes another, the agent, to conduct one or more transactions with one or more third persons and to exercise a degree of discretion in effecting the principal's purpose." (*Lombardo* v. *Santa Monica Young Men's Christian Assn.* (1985) 169 Cal.App.3d 529, 541 [215 Cal.Rptr. 224].) The agency relationship must be distinguished from the relationship of employer-employee. "An 'employee' is one who is subject to the absolute control and direction of his employer in regard to any act, labor or work to be done in the course and scope of his employment. [Citations.] . . . An 'agent' is defined by section 2295 of the Civil Code as follows: 'An agent is one who represents another, called the principal, in dealings with third persons.'" (*Gipson* v. *Davis Realty Co.* (1963) 215 Cal.App.2d 190, 205 [30 Cal.Rptr. 253].)

There are no facts to indicate that the man at issue was anything more than an employee of Southern Pacific or that he had the authority to permit persons to ride a train. The facts showed him to be nothing more than a switchman. The trial court correctly determined that Rivera had alleged no fact indicating he was authorized to board the train.

Rivera argued that authorization could be implied from the fact that persons often hopped trains from the Yuma railroad yard and that there were no signs indicating that train hopping was prohibited, nor did anyone actively interfere with the practice. Again, there is a distinction between noninterference and authorization. ■ Further, Civil Code section 1714.7 was enacted to protect railroads from the burdens inherent in monitoring trains to ensure that no unauthorized person is riding them. (*Dur-*

*ham* v. *City of Los Angeles, supra*, 91 Cal.App.3d at p. 574.) ██ Finally, we note that those who hopped the train took care to secrete themselves both before boarding and while riding. That Rivera believed himself to be authorized to ride is contradicted by the fact that he rode underneath cars "[a]t one side of the tire, on one side of it." Even accepting that his caution was at least in part the result of his fear of being seen by immigration agents, it is an indication that he knew he was not authorized to ride the trains.

The judgment is affirmed.

Newsom, Acting P. J., and Holmdahl, J., concurred.