Filed 4/20/17 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| PACIFIC GAS AND ELECTRIC COMPANY,<br><br>        Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SAN MATEO COUNTY,<br><br>        Respondent;<br><br>ZACHARY ROWE, et al.,<br><br>        Real Parties in Interest. | A146495<br><br>(San Mateo County<br>Super. Ct. No. CIV 515962)<br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING [NO CHANGE IN JUDGMENT]** |

**BY THE COURT:**

On April 17, 2017, we received a letter from counsel for PG&E requesting that we modify our opinion in this case. We treat this request as a petition for rehearing, which we deny. However, we order that the opinion filed on April 5, 2017, be modified as follows:

1.     On pages 25 through 26: delete the last four paragraphs of Part VI in full. They begin at page 25 with the language "Finally, at oral argument, . . . ." and end on page 26 with the last full paragraph before Part VII.

2.     Insert in place of those paragraphs the following discussion:

Finally, at oral argument, PG&E invoked *Wang*, *supra*, 4 Cal.App.5th 1, a personal injury action brought against owners of a meadow who had permitted participants in a historic wagon train event to camp on their property along with their

1

horses. The participants paid a fee to the event organizers to participate (not to the landowners), and the event organizers arranged for the accommodations. (*Wang*, *supra*, 4 Cal.App.5th at pp. 6–8, 29.) During the event, a horse ran away and injured the plaintiff, who was on a neighboring property and was not involved in the event. (*Id*. at pp. 5–6.)

At oral argument, PG&E argued *Wang* held that the fee paid by event participants to the event organizer did not trigger the consideration exception because it wasn't paid to the defendant landowner, which supported PG&E's construction of the statute. Counsel stated that in *Wang* "the court of appeal rejected an argument that that fee would waive the defendant landowners' immunity," and quoted the following portion of *Wang*: "That [event organizer] raises funds and charges participants to join the Wagon Train does not affect the landowner's reliance on section 846. (*Ibid*. [company employees paid company club to attend picnic].)." (*Wang*, *supra*, 4 Cal.App.5th at p. 29, citing *Johnson*, *supra*, 21 Cal.App.4th at p. 310.)

We disagree. *Wang* is inapposite. The quoted portion of the opinion has nothing to do with the consideration exception. It concerns the question whether the wagon train was for a recreational purpose, which is an entirely different issue. (See *Wang*, *supra*, 4 Cal.App.5th at pp. 28–30.)

There is no change in the judgment.


Dated:_____     _____ P.J

2

Trial Court:   San Mateo County Superior Court

Trial Judge:   Hon. Steven L. Dylina

Counsel:

Horvitz & Levy, Robert H. Wright, Jeremy B. Rosen; Pacific Gas & Electric Company, Barbara J. Damlos; Sedgwick LLP, Gregory C. Read for Petitioner.

Rouda, Feder, Tietjen & McGuinn, Timothy G. Tietjen; Law Office of Gerald Clausen and Gerald Clausen for Real Party in Interest.

Filed 4/5/17 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| PACIFIC GAS AND ELECTRIC COMPANY, <br><br>    Petitioner, <br><br>v. <br><br>THE SUPERIOR COURT OF SAN MATEO COUNTY, <br><br>    Respondent; <br><br>ZACHARY ROWE, a Minor, etc., et al., <br><br>    Real Parties in Interest. | A146495 <br><br> (San Mateo County <br> Super. Ct. No. CIV 515962) |

Civil Code section 846, California's recreational use immunity statute, confers property owners with immunity from liability arising from the recreational use of their property.[1] (See § 846.) At issue here is one of its enumerated exceptions, applicable when permission to enter the premises for a recreational purpose "was granted for a consideration." (*Id.*, 4th par., item (b).)

Twelve-year-old Zachary Rowe suffered catastrophic injuries during a camping trip with his family to San Mateo County Memorial Park, when a 75-foot tree fell on his tent at 5:00 a.m. as he lay sleeping. Petitioner Pacific Gas and Electric Company (PG&E) owns and maintains an electricity distribution line in the park that serviced a nearby restroom, and has a license conferred by its utility tariff permitting it to enter the park to inspect and maintain its equipment and the vegetation in the vicinity of its power

---

[1] Unless otherwise noted, all subsequent statutory references are to the Civil Code.

1

lines, including near the campsite where Zachary was injured. Zachary's family paid an entrance fee to camp there only to the park's owner, the County of San Mateo (County), but paid nothing to PG&E. It also is undisputed the County paid PG&E for electricity used at the park.

Here, we are asked to decide whether PG&E retains its immunity under section 846, notwithstanding the payment of this camping fee to the County (there being no dispute that the statute otherwise applies to PG&E as a licensee of the campground's owner). PG&E contends that it does retain immunity, asking us to construe the consideration exception as applicable only when the defendant claiming immunity receives all or some portion of the consideration paid.

We reject that interpretation of section 846. We conclude that the consideration exception to recreational use immunity does apply to PG&E even though Zachary's fee for recreational access to the campground was not paid to it, and therefore affirm the trial court's denial of PG&E's motion for summary judgment asserting section 846 immunity. We hold that the payment of consideration in exchange for permission to enter a premises for a recreational purpose abrogates the section 846 immunity of any nonpossessory interest holder who is potentially responsible for the plaintiff's injuries, including a licensee or easement holder who possesses only a limited right to enter and use a premises on specified terms but no right to control third-party access to the premises. The contrary interpretation urged by PG&E, making immunity contingent not on payment of consideration but its receipt, is supported neither by the statutory text nor the Legislature's purpose in enacting section 846, which was to encourage free public access to property for recreational use. It also would lead to troubling, anomalous results we do not think the Legislature intended. At bottom, construing this exception as applying only to defendants who receive or benefit from the consideration paid loses sight of the fact that recreational immunity is merely a tool. It is the Legislature's chosen means, not an end unto itself.

2

## BACKGROUND

In the summer of 2012, Zachary and his family went camping in San Mateo County Memorial Park. Zachary's mother paid a $50 fee to the County for their five-night campsite rental.

An electrical line runs adjacent to the campsite they rented, which delivers electricity to nearby restrooms. PG&E owns and maintains the electrical line, which consists of nine poles, approximately 1,715 feet of electrical wire, transformers and other equipment. Pursuant to its utility tariff, PG&E has the right to enter the park to inspect and maintain the line and perform vegetation management, and it regularly does so.[2]

At approximately 5:00 in the morning on July 23, 2012, a 75-foot tall tree fell and struck the tent at Campsite D-1 that Zachary occupied with his mother. The tree was located approximately 30 to 40 feet from PG&E's power line, within striking distance of the line had it fallen in that direction. Zachary suffered catastrophic injuries.

Zachary, through his guardian ad litem, brought suit against PG&E, the County and others. He asserted a single cause of action against PG&E for negligence, alleging PG&E "was responsible for maintaining its electrical lines and adjacent areas in a safe condition," but "negligently inspected and maintained the trees in proximity to the electrical lines adjacent to [the campsite] where [Zachary] was severely injured," and failed to warn him and his mother "of the dangerous conditions presented by the diseased and rotten trees adjacent to the electrical lines and [his] campsite."

PG&E moved for summary judgment on the ground that it owed Zachary no duty of care as a matter of law pursuant to section 846. The trial court denied the motion, certified the question as appropriate for our interlocutory review under Code of Civil Procedure section 166.1, and this petition for writ of mandate followed.

---

[2] Section 11 of PG&E's Electric Tariff Rule 16 states in pertinent part: "PG&E shall at all times have the right to enter and leave Applicant's Premises for any purpose connected with the furnishing of electric service (meter reading, inspection, testing, routine repairs, replacement, maintenance, vegetation management, emergency work, etc.) and the exercise of any and all rights secured to it by law, or under PG&E's tariff schedules."

3

# DISCUSSION

## I.

### *Overview*

"Section 846 was enacted to encourage property owners to allow the general public to engage in recreational activities free of charge on privately owned property." (*Hubbard v. Brown* (1990) 50 Cal.3d 189, 193 (*Hubbard*); accord, *Delta Farms Reclamation Dist. v. Superior Court* (1983) 33 Cal.3d 699, 707 (*Delta Farms*).) "The statutory goal was to constrain the growing tendency of private landowners to bar public access to their land for recreational uses out of fear of incurring tort liability." (*Hubbard*, at p. 193.) It expresses "a strong policy that land should be open to recreational use." (*Id.* at p. 192.) The statute accomplishes this goal "by immunizing persons with interests in property from tort liability to recreational users, thus making recreational users responsible for their own safety and eliminating the financial risk that had kept land closed." (*Ibid.*) Yet the Legislature didn't intend to protect landowners at all cost. "[I]n crafting legislation that would prevent the closure of private lands to recreational users because of landowners' liability concerns, the California Legislature sought to strike a fair balance between the interests of private landowners and those of recreational users."[3] (*Klein v. United States* (2010) 50 Cal.4th 68, 82 (*Klein*).)

Section 846's first paragraph "defines the scope of immunity."[4] (*Klein*, *supra*, 50 Cal.4th at p. 77.) That paragraph states: "An owner of any estate or *any other interest in real property*, whether possessory or nonpossessory, owes no duty of care to keep the premises safe for entry or use by others for any recreational purpose or to give any

---

[3] Section 846 does not apply to public entities. (*Delta Farms*, *supra*, 33 Cal.3d at pp. 704–709.) Accordingly, the County did not invoke section 846 and only PG&E's immunity is at issue here. The County has filed a separate writ petition that raises other issues.

[4] Strictly speaking, section 846 does not confer immunity but, rather, it "negates the tort" altogether by eliminating any duty of care under specified conditions. (See *Klein*, *supra*, 50 Cal.4th at p. 78.) Like other courts before us, we refer here to its protections as immunity for convenience.

4

warning of hazardous conditions, uses of, structures, or activities on those premises to persons entering for a recreational purpose, except as provided in this section." (§ 846, 1st par., italics added.) There is no dispute that PG&E's license under its utility tariff constitutes an "interest" in San Mateo County Memorial Park that qualifies for protection under this paragraph. The statute "clearly" applies to "private owners of easements and of revocable licenses." (*Hubbard*, *supra*, 50 Cal.3d at p. 197.) It "immunize[s] owners of any interest in real property, regardless of whether the interest includes the right of exclusive possession."[5] (*Ibid.*; see also *Manuel v. Pacific Gas & Electric Co.* (2009) 173 Cal.App.4th 927, 938, fn. 3 [utility easement holder]; *Colvin v. Southern Cal. Edison Co.* (1987) 194 Cal.App.3d 1306, 1312 [same], abrogated on other grounds in *Ornelas v. Randolph* (1993) 4 Cal.4th 1095, 1103–1109 (*Ornelas*).)

Section 846's second paragraph defines the phrase "recreational purpose," by means of a non-exhaustive list of activities that "range from risky activities enjoyed by the hardy few. . . to more sedentary pursuits amenable to almost anyone . . . ." (*Ornelas*, *supra*, 4 Cal.4th at p. 1101.) It includes "camping." (§ 846, 2d par.)

The third paragraph of section 846 "adds an additional immunity." (*Klein*, *supra*, 50 Cal.4th at p. 78.) It states: "An owner of any estate or any other interest in real property, whether possessory or nonpossessory, who gives permission to another for entry or use for the above purpose upon the premises does not thereby (a) extend any assurance that the premises are safe for that purpose, or (b) constitute the person to whom permission has been granted the legal status of an invitee or licensee to whom a duty of care is owed, or (c) assume responsibility for or incur liability for any injury to person or property caused by any act of the person to whom permission has been granted except as provided in this section." (§ 846, 3d par.)

---

[5] We do not address whether the access rights conferred on PG&E under its tariff constitute an easement or a license, because the distinction is immaterial. Both parties characterize PG&E's interest as a "license," as they did in the trial court, and so we use that nomenclature here.

The consideration exception appears in the statute's fourth paragraph, which sets forth three "limitations on, or exceptions to, the landowner immunity it has granted." (*Klein*, *supra*, 50 Cal.4th at p. 78.) It states: "This section does not limit the liability which otherwise exists (a) for willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity; or (b) *for injury suffered in any case where permission to enter for the above purpose was granted for a consideration other than the consideration, if any, paid to said landowner by the state, or where consideration has been received from others for the same purpose*; or (c) to any persons who are expressly invited rather than merely permitted to come upon the premises by the landowner." (§ 846, 4th par., italics added). Its application here, where PG&E received no portion of the consideration paid, presents an issue of first impression under California law.[6]

The principles governing our interpretation of this provision are set forth in *Klein*, *supra*, 50 Cal.4th 68, the Supreme Court's most recent decision to construe section 846. As was said in *Klein*, "In construing statutes, we aim 'to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law.' " (*Id*. at p. 77.) This requires us to look first to the statute's words, " 'because the statutory language is generally the most reliable indicator of legislative intent.' " (*Ibid*.) "When the statutory text is ambiguous, or it otherwise fails to resolve the question of its intended meaning, courts look to the statute's legislative history and

---

[6] We express no opinion concerning the legal significance, if any, of the revenues PG&E earned from the electricity the County paid it to supply at the campground, because that issue is not before us. In the trial court, Zachary contended that electricity revenues constituted an "indirect" financial benefit to PG&E from the camping fee, because "[t]he logical inference to be drawn . . . is that a portion of camping fees was diverted to PG&E." But he also argued the payments for electricity "are *not* a consideration for permission to enter under section 846," maintaining only that they "provide a further rationale" for concluding that application of section 846 here would be "inequitable." (Italics added.) And in this court, Zachary frames the issue solely as whether the consideration exception "applies not only to an owner of an interest in real property who receives the consideration, but also to one who does not."

6

the historical circumstances behind its enactment." (*Ibid*.)  Finally, where there is uncertainty, a court also should consider the consequences that are likely to result from a particular interpretation.  (*Ibid*.; see also *Ornelas*, *supra*, 4 Cal.4th at p. 1105 ["Courts may, of course, disregard even plain language which leads to absurd results or contravenes clear evidence of a contrary legislative intent"].)  Moreover, in construing this provision, we review the trial court's ruling de novo, because "[t]he meaning and construction of a statute is a question of law, which we decide independently."  (*B.H. v. County of San Bernardino* (2015) 62 Cal.4th 168, 189.)

## II.

### *The Statute by Its Terms Does Not Grant Any Immunity Where Consideration Is Paid for Recreational Use of Property.*

At issue here, as noted, is the meaning of the phrase, "for injury suffered in any case where permission to enter for the above purpose was granted for a consideration other than the consideration, if any, paid to said landowner by the state, or where consideration has been received from others for the same purpose." (§ 846, 4th par., item (b).)

Turning first to the statutory text, section 846 preserves tort duties "in any case where permission to enter . . . was granted for a consideration" without specifying who must receive the consideration.  (See *Graves v. U.S. Coast Guard* (9th Cir. 1982) 692 F.2d 71, 73 ["The statute does not specify to whom the consideration is to be paid"].)  It contains no language suggesting that the retention of potential tort liability extends only to the person or entity who receives the consideration.  On the contrary, it specifies that tort duties are preserved "in *any* case where permission to enter for the above purpose was granted for a consideration," unless the consideration, "if any," was "paid to said landowner by the state." (Italics added.)  The language "in any case" is all-encompassing (cf. *Ornelas*, *supra*, 4 Cal.4th at p. 1105; *id*. at pp. 1109–1110 [conc. opn. of George, J.]).  And it is followed by language that exempts some situations based on who *pays* the consideration (i.e., consideration paid by the state) but does not similarly exempt situations based on who *receives* it.  To put it simply, the Legislature knew how

7

to limit the consideration exception but chose not to limit the exception in the manner PG&E suggests.[7]  In short, the statutory language does not support the interpretation urged by PG&E.

Nor are we at liberty to add terms to the statute, which in effect PG&E asks us to do.  PG&E urges us to construe the statutory text as if it read:  "for injury suffered in any case where permission to enter for the above purpose was granted for a consideration *paid to the property owner invoking this section* other than the consideration, if any, paid to said landowner by the state, or where consideration has been received from others for the same purpose."  In interpreting section 846, our job is "simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted . . . ."  (Code Civ. Proc., § 1858.)  We cannot add limiting language to section 846 when the Legislature did not.  (See *Wang v. Nibbelink* (2016) 4 Cal.App.5th 1, 18 (*Wang*) [rejecting construction of section 846 "that would have us add language not placed there by the Legislature"]; cf. *Ornelas*, *supra*, 4 Cal.4th at p. 1105 [rejecting construction of section 846 that entailed a "a purely judicial construct, without any basis or support in the statutory language"]; *Wang*, at p. 18 ["*Ornelas* declined to add language to the statute"].)

In arguing for a construction that would narrow the operation of paragraph 4, PG&E contends the key statutory language is the phrase, "said landowner."  PG&E asserts, "the consideration exception first discusses the circumstance in which permission to enter is granted for a consideration and then refers immediately to 'said landowner.' " According to PG&E, the term "landowner" "refers to a property owner claiming immunity," and "[b]ecause the term 'said' relates back to what is previously mentioned . . . it follows that a landowner not receiving consideration for permission to

---

[7] Nor does the exceptions' prefatory language aid PG&E.  The fourth paragraph begins, "This section does not limit the liability which otherwise exists" and goes on to list the three exceptions from the immunity the statute creates.  (§ 846, 4th par.)  This language too is unqualified.  It is not limited, but rather it encompasses all owners of interests in property, not only those who charge or receive the consideration.

8

enter the property will be afforded immunity under the statute." The parties debate the rules of grammar on this point at some length, but we need not travel that ground. The flaw in PG&E's argument is its assertion that the term "landowner" refers to a property owner *claiming immunity*. There is no textual basis for that position. PG&E's argument might make sense if there was an earlier reference in the paragraph (or, for that matter, in the statute) to a property owner claiming immunity. But there is none—neither in paragraph 4 nor anywhere else in the statute.

PG&E's sole support for its position rests on a misreading of the Supreme Court's decision in *Klein,* which PG&E asserts "construed" the term "landowner" "as shorthand for the owner of a possessory or nonpossessory interest in property claiming immunity under the statute." PG&E overreads *Klein*. At issue in *Klein* was the kind of tort claims displaced by the statute, not which property owners may claim the statute's protection. Specifically, *Klein* held section 846 doesn't apply to acts of vehicular negligence by a landowner or its employee. (*Klein*, *supra*, 50 Cal.4th at p. 72.) In two portions of the opinion PG&E cites, the court used the term "landowner": in one instance, describing the legal effect of the statute's first paragraph (see *id*. at p. 77, quoted *ante*) and in the other, analyzing the statute's breadth (see *id*. at p. 85 [earlier case law's characterization of the statute as "extremely broad" refers to, inter alia, "the *type* of interest held by the landowner (possessory or nonpossessory)"]). Contrary to PG&E's characterization, *Klein* did not "construe" the term "landowner" as used in the statute's fourth paragraph. The court did not address that statutory language.

PG&E similarly misplaces reliance on *Johnson v. Unocal Corp.* (1993) 21 Cal.App.4th 310, 316 (*Johnson*) for the proposition that there must be an " 'actual payment of an entrance fee *to the defendant*.' " (Italics added by PG&E.) *Johnson* did not address whether the consideration exception applies only to a party who receives payment of consideration; rather, it addressed what constitutes consideration for purposes of the exception. There the plaintiff, injured during a game of horseshoes at a company picnic on the defendant's land, argued his employer's execution of a hold harmless agreement in favor of the defendant constituted consideration within the meaning of the

9

consideration exception to statutory immunity. (*Id*. at p. 312.) The court disagreed, holding "such a remote, potential 'benefit' " to the owner did not constitute consideration. (*Id*. at p. 315.) "The mere potential for reimbursement [by the employer] for defense costs incurred if a suit were filed is neither current payment for entry nor a benefit currently received for entry." (*Id*. at p. 316.) Nothing in *Johnson* aids PG&E's argument.[8]

There are two possible meanings of the term "landowner" as used in the consideration exception in paragraph 4, but we need not decide between them. Our colleagues in Division Three have construed that term, as used in the invitation exception, to refer only to the owner of the fee and not to a utility easement holder. (See *Jackson v. Pacific Gas & Electric Co*. (2001) 94 Cal.App.4th 1110, 1118 (*Jackson*).) The other possible meaning, which *Jackson* rejected, is that "said landowner" refers back to the owner referenced in paragraphs 1 and 3, i.e., to an "owner of any estate or any other interest in real property, whether possessory or nonpossessory. . . ." (See § 846, 1st and 3d paragraphs; see also *Hubbard*, *supra*, 50 Cal.3d at p. 197 [section 846 "immunize[s] *owners* of any interest in real property, regardless of whether the interest includes the right of exclusive possession"], italics added; *Ornelas*, *supra*, 4 Cal.4th at p. 1102 [section 846 reflects an " 'ownership requirement [that is] both exceptionally broad and singularly ambiguous' "].) In the end, the interpretation of the consideration exception does not turn on the meaning of "said landowner" because whether or not that phrase includes nonpossessory interests, it simply is not limited to an owner who *claims*

---

[8] At oral argument, PG&E asserted that in *Johnson* the plaintiff's purchase of a ticket from his employer to attend the picnic was held not to trigger the consideration exception either, because even though (PG&E contended) the ticket payment constituted consideration for permission to use the property, the payment was not made to the defendant landowner. This is completely inaccurate. The sole question relating to the consideration exception was whether the hold harmless agreement constituted consideration. (See *Johnson*, *supra*, 21 Cal.App.4th at pp. 312, 314–316.) *Johnson* contains no legal analysis—none—of the picnic ticket.

10

*immunity* under the statute.  Nothing about the phrase "said landowner" or any other language of the statute suggests that meaning.

## III.

### *Statutory Purpose*

Our interpretation is consistent with the statutory purpose underlying the recreational immunity statute.  In *Delta Farms*, *supra*, 33 Cal.3d at pp. 707–708, which held section 846 inapplicable to public entity property owners, our Supreme Court stated that the purpose of the statute was "to encourage property owners 'to allow the general public to recreate free of charge on *privately* owned property,' " observing that "[t]his purpose is achieved by a basic declaration that owners owe 'no duty of care to keep the premises safe' for . . . recreational purposes." (*Ibid.*; see also *Ornelas*, *supra*, 4 Cal.4th at p. 1107 [referring to Legislature's "laudable goal of inducing owners to make their properties available for recreation"].)[9]  "Broadly speaking," the court observed, "the only exceptions relate to (a) victims of wilful or malicious conduct by the owner, (b) persons who have paid consideration for permission to enter, and (c) express invitees." (*Delta Farms*, at p. 708.)

As *Delta Farms* indicates, the immunity conferred by section 846 is a means to an end.  The Legislature didn't grant immunity for its own sake, as a beneficence to private landowners at the expense of injured parties.  Rather, it provided immunity to encourage landowners to allow free use of their property by removing a disincentive to their doing so.  As academic commentators have described it, recreational use immunity reflects a bargain:  a "quid pro quo" of sorts.  (See Comment, *Wisconsin's Recreational Use Statute:  A Critical Analysis* (1983) 66 Marq. L.Rev. 312, 320–321 (*Wisconsin's Recreational Use Statute*).)  That is, "legislatures created a 'quid pro quo' whereby the landowner received immunity from lawsuits due to his negligence in return for opening

---

[9] Our Supreme Court has also stated the purpose in the converse:  "to constrain the growing tendency of private landowners to bar public access to their land for recreational uses out of fear of incurring tort liability." (*Hubbard*, *supra*, 50 Cal.3d at p. 193.)

his land to the public." (*Id.* at p. 321, fn. omitted; see also Note, *The Minnesota Recreational Use Statute: A Preliminary Analysis* (1977) 3 Wm. Mitchell L.Rev. 117, 119 [recreational use immunity statutes "offer a pragmatic 'trade-off' whereby the landowner is relieved of certain tort duties when he gratuitously allows access to his land by members of the public for recreation"]; *Wisconsin's Recreational Use Statute*, *supra*, 66 Marq. L.Rev. at p. 316 ["These statutes can best be described as a 'tradeoff,' whereby the landowner is relieved of certain tort liabilities when he gratuitously allows members of the public recreational access to his land"].)

The statutory exceptions to the immunity must be understood in this context. The immunity was provided for a purpose, and the exceptions reflect situations in which the Legislature did not think "governmental encouragement" in the form of immunity was necessary to achieve that purpose. (See *Calhoon v. Lewis* (2000) 81 Cal.App.4th 108, 114 [exception for those who are personally invited reflects Legislature's understanding that "[p]roperty owners do not need governmental encouragement to permit personal guests to come onto their land"].)

Regarding the consideration exception in particular, as Zachary states in his brief, "[o]nce permission to enter for a recreational purpose is conditioned upon the payment of a consideration, the property is no longer open to the public to recreate 'free of charge' " and so "[t]he reason for the immunity evaporates." And, like the other exceptions, the consideration exception may reflect a legislative determination that "[p]roperty owners do not need governmental encouragement to permit [paying] guests to come onto their land" (cf. *Calhoon v. Lewis*, *supra*, 81 Cal.App.4th at p. 114), and that charging for entry means excluding those who do not pay, contrary to the legislative goal of broad public access. In any event, we agree with Zachary that in this situation, it would be illogical to retain immunity for *some* holders of property interests (i.e., nonpossessory interest holders who did not receive the consideration) when no purpose with which the Legislature was concerned would be served.

PG&E responds that allowing "one property owner's unilateral action [to] waive the immunity of all owners of the same property, private landowners would once again be

compelled to bar their land to the public to avoid the threat of tort liability for all property owners." That would happen, it argues, because the "uncertainty" and potential liability that would result "would create conflict among private landowners and increase the pressure on all landowners to bar their land to the public for recreational uses to avoid the threat of tort liability to any landowner." But PG&E posits not a single, real-world example of how that might come to pass, and we are hard-pressed to think of any.[10] There *is* no reason to think a private landowner standing in San Mateo County's shoes would close its campground in response to a ruling that Zachary could pursue *PG&E* in tort. On the contrary, a private property owner who charges consideration in exchange for permitting the public to recreate on their land and thereby relinquishes its own immunity from suit, would most likely prefer the liability risk to be spread among *all* holders of interests in his or her land, especially those who, like PG&E, might potentially be responsible for creating a hazardous condition.[11]

For this reason, a construction of section 846 that leaves the immunity of licensees and other nonpossessory interest holders fully intact when a private landowner charges a fee for people to recreate thereby relinquishing its own immunity, would not serve the legislative purpose but potentially thwart it. (Cf. *Klein*, *supra*, 50 Cal.4th at p. 82.) When a defendant enjoys immunity under section 846, the statute's protection extends to claims for implied indemnity as well. (*Prince v. Pacific Gas & Electric Co.* (2009) 45 Cal.4th 1151.) If only the owner who grants access in return for a fee faces potential tort liability to the people it allows to camp, swim, spelunk or sky dive on its property, that property owner alone would shoulder the risk of litigation by injured recreational users even where the injury was caused partially, or *entirely*, by the actions of those to whom it granted a license or easement. The prospect of assuming the entire risk of liability not only for its own negligence, but for the negligence of those holding

---

[10] We express no opinion concerning application of the consideration exception to multiple holders of possessory interests, such as joint tenants.

[11] We express no view on the merits of Zachary's claim that PG&E negligently maintained the tree that fell on him and is responsible for his injuries.

13

nonpossessory interests could deter the landowner from opening the property to the public even for a fee.

PG&E also argues this construction would give the County "the unilateral power to abrogate PG&E's immunity" under section 846. Maybe so, but that is a byproduct of the fact that landowners with fee simple title have greater rights than those with nonpossessory interests and may choose to generate revenue from their property in exchange for forgoing immunity. Further, it reflects a legislative determination that extending immunity to nonpossessory interest holders like PG&E serves the goal of free public recreation when access is free but contributes nothing toward that goal when the landowner is providing access for a fee. At bottom, PG&E's fairness arguments lose sight of the purpose served by recreational immunity. Again, the Legislature did not create immunity under section 846 for its own sake (i.e., to confer a benefit on private property owners by protecting them from tort liability generally). That PG&E's enjoyment of immunity, as the holder of a nonpossessory interest, will depend on the actions of others is not a reason to favor one interpretation of the statute over another. It is simply a function of the statute's purpose.

Furthermore, PG&E views this issue solely from the perspective of a property owner but that is too solipsistic a lens. The Legislature was concerned with recreational users too, and sought to strike "a fair balance" between the interests of parties on both sides of the equation. (*Klein*, *supra*, 50 Cal.4th at p. 82.) The means by which section 846 sought to achieve its goal of opening land to public recreational use was by "making recreational users responsible for their own safety" when land is opened for free. (*Hubbard*, *supra*, 50 Cal.3d at p. 192.) But under PG&E's construction, a *paying* recreational user would be "responsible for their own safety" too, insofar as dangers created by nonpossessory interest holders. That does nothing to further the Legislature's goal.

We are not unmindful, as PG&E urges, that section 846 broadly applies to the holders of nonpossessory interests who themselves have no power to control third-party access to recreational land. (See *Hubbard*, *supra*, 50 Cal.3d at p. 197.) But it is one

14

thing to grant immunity to those with no power to exclude recreational users from property (under circumstances in which the landowner enjoys immunity too), for one can envision the pressures a licensee or easement holder might exert on a landowner to deny free public access if immunity from tort liability did not apply to all, across the board. It is quite another thing, however, to retain their immunity when the landowner with power to control access relinquishes its own immunity by charging the public a fee (or other consideration) as the price of admission.[12] That is a *quo* with no *quid*, furthering no purpose at all. For, as we have said, the Legislature sought to encourage the free use of private property (the "*quid*"), and when a fee owner refrains from charging a fee for access to that property, *all* holders of interests in the property benefit by the assurance of immunity under section 846 (the "*quo*"). But if the fee owner does charge consideration for permission to enter, there is no longer any "*quid*" to achieve; in that circumstance, the purpose for the benefit of immunity disappears. Retaining anyone's immunity in that circumstance (the "*quo*") is pointless. PG&E's contrary interpretation would allow some property interest holders to retain their immunity under circumstances in which the public gets nothing in return.

## IV.

### *Legislative History*

There is nothing in the statute's legislative history suggesting the Legislature intended that anomalous result. On the contrary, what little history there is confirms the Legislature remained focused solely on ensuring public recreational access to property.

The statute's legislative history is sparse. (*Klein*, *supra*, 50 Cal.4th at p. 82.) Enacted in 1963, section 846 originally specified that it applied to "an owner of any estate in real property" and only a limited list of recreational activities ("taking of fish and game, camping, water sports, hiking or sightseeing"). (Stats. 1963, ch. 1759, § 1,

---

[12] We recognize that is not precisely the case here because the County, as a public entity, is not protected by section 846 and so the campground fee does not impact its immunity. (See footnote 3, *ante*.) But our construction of section 846 cannot ignore the implications of PG&E's position as a general matter.

15

pp. 3511–3522.)  The Legislature amended the statute several times to expand the list of covered recreational activities, and broadened the statute to embrace "any recreational purpose."  (See *Ornelas*, *supra*, 4 Cal.4th at p. 1100, fn. 5.)  In 1980, it also added the phrases "or any other interest" and "whether possessory or nonpossessory" to the statute's description of protected property interests (Stats. 1980, ch. 408, § 1, p. 797), which we discuss *post*.

As originally enacted, the consideration exception itself was structurally identical to its present form but more narrow in scope.  It specified that, "This section does not limit the liability which otherwise exists . . . (b) for injury suffered in any case where permission to take fish and game, camp, hike or sightsee was granted for a consideration other than the consideration, if any, paid to said landowner by the State . . . ."  (Stats. 1963, ch. 1759, § 1, p. 3512.)  The Legislative Counsel's digest described the exception as applying "where compensation is paid for the use of land."  (See Legis. Counsel's Dig., Sen. Bill. No. 639 (1963 Reg. Sess.) Stats. 1963, ch. 1759, Summary Dig., p. 63.)  In 1978, the consideration exception was expanded to its present form, through an amendment adding the phrase, "or where consideration has been received from others for the same purpose."  (Stats. 1978, ch. 86, § 1, p. 221 (1977–1978 Reg. Sess.).)  The Legislature did this at the same time it broadened the statute to extend to "any recreational purpose" and added a number of specified activities.  (Stats. 1978, ch. 86, § 1, p. 221 (1977–1978 Reg. Sess.).)

As we see it, the critical juncture for purposes here came after that, in 1980 when the Legislature amended section 846 to specify that it applied to the owner of "any" interest in real property, "whether possessory or nonpossessory."  (Stats. 1980, ch. 408, § 1, p. 797.)  The Legislature did so in response to two appellate decisions limiting the statute to holders of possessory interests:  *Darr v. Lone Star Industries, Inc.* (1979) 94 Cal.App.3d 895 (*Darr*), which held section 846 inapplicable to an easement owner who had constructed a bridge from which a trespasser dove and sustained personal injuries, and *O'Shea v. Claude C. Wood Co.* (1979) 97 Cal.App.3d 903 (*O'Shea*), which held the statute inapplicable to claims brought by an injured motorcyclist against a

16

contractor with a license to excavate and temporarily stockpile dirt on the landowner's property. (See *Ornelas*, *supra*, 4 Cal.4th at pp. 1102–1103; *Hubbard*, *supra*, 50 Cal.3d at pp. 194–195.) "[T]he legislative intent in amending section 846 was to immunize owners of any interest in real property, regardless of whether the interest includes the right of exclusive possession." (See *Hubbard*, *supra*, 50 Cal.3d at p. 197.) The Legislature intended to "broaden the scope of the statute so that it would apply to the *Darr* and *O'Shea* contexts in future cases." (*Id.* at pp. 194–195.)

It is clear that in doing so, the Legislature sought only to achieve parity for the holders of licenses, easements and other nonpossessory interests, to make their immunity commensurate with that of other landowners. For example, a report by the Assembly Judiciary Committee states: "Proponents argue that the distinction made between owners of possessory interests and owners of nonpossessory interests leads to anomalous results. They cite the situation in which the landowner avoids liability to a recreational user whereas the owner of an easement over the land cannot do so. Moreover, according to proponents, some easement or license owners would be liable to recreational users on land actually owned by another party even though such easement or license owners would not be liable in similar circumstances on their own land." (Assem. Com. on Judiciary, Bill Digest of Assem. Bill No. 1966 (1979–1980 Reg. Sess.) as amended Feb. 11, 1980, p. 3.) Similarly, a Senate Judiciary Committee report pointed out "anomalous distinctions" the bill was intended to rectify.[13] (Sen. Com. on Judiciary, Rep. on Assem. Bill No. 1966 (1979–1980 Reg. Sess.) as amended Feb. 11, p. 3.) According to that Senate report, "Proponents of this bill feel that it is anomalous to allow only owners of possessory interests in land to have the immunity of Sec. 846. Thus, the owner who grants an easement to another is protected, but the easement grantee is not. [¶] . . . [¶] Proponents argue that those who come onto a landowner's property for construction, logging or other operations have no control over recreational users who

---

[13] The trial court judicially noticed both reports, and so do we. (See Evid. Code, § 459, subd. (a).)

17

may enter the property, yet will be liable for injuries. If those with nonpossessory interests are not afforded immunity, they say, numerous private landholdings in California will be closed to recreational users and the public policy behind Sec. 846 will be thwarted." (*Id*. at pp. 3–4.) Other legislative history material reflects similar comments. (See Resources Agency, Cal. Dept. of Fish and Game, Enrolled Bill Rep. on Assem. Bill. No. 1966 (1979–1980 Reg. Sess.) July 1980[14] ["The effect of this bill would be to provide *the same protection* now provided to the owner of an estate in real property to owners of interests in real property"], italics added.)

There appears to have been no discussion of the consideration exception when the Legislature enacted this crucial amendment, which left the exception itself unchanged. Yet there is no indication in the legislative history the 1980 amendment was intended to grant license or easement holders *greater* immunity than that of a landowner, as would be true if the payment of an entrance fee abrogated only a landowner's immunity from suit but not that of anyone with lesser, non-exclusive rights in the land. For example, nothing in the legislative history evinces any intention by the Legislature to protect the easement holder who built the bridge in *Darr* from liability had *the property owner* relinquished its own immunity from suit by charging the plaintiff a fee to swim in the river.[15] And nothing evinces any intention to immunize the excavation contractor in *O'Shea* had the landowner in that case lost *its* immunity by charging the motorcyclist a fee to ride there. Yet in many cases someone with a nonpossessory right to access and use property might bear greater responsibility for creating a dangerous condition than the actual owner, as

---

**14** See *Elsner v. Uveges* (2004) 34 Cal.4th 915, 934, fn. 19 ("we have routinely found enrolled bill reports, prepared by a responsible agency contemporaneous with passage and before signing, instructive on matters of legislative intent"); accord, *Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1218, fn. 3; see also *Lee v. Hanley* (2015) 61 Cal.4th 1225, 1235 (considering same).

**15** The landowner in *Darr* was the State of California, which has no immunity under section 846. (See *Delta Farms*, *supra*, 33 Cal.3d at pp. 704–709.) However, both *Darr* and the Legislature's responsive amendment in 1980 predated the Supreme Court's ruling in *Delta Farms* that public entities are not covered by section 846.

appears to be true, for example, of the excavation contractor in *O'Shea* who built up a dangerous dirt pile. (See *O'Shea*, *supra*, 97 Cal.App.3d at pp. 907–908.)

In short, what little legislative history there is indicates the Legislature intended to put the holders of nonpossessory property interests merely on an equal footing with property owners, not confer on them immunity for its own sake divorced from the statute's underlying purpose. Every indication is the Legislature sought only to *correct* an anomalous result, not to *create* one.

## V.

### *Public Policy Considerations*

While not dispositive, we also consider the public policy implications of a particular interpretation, "to ensure that the construction we adopt will not produce manifestly adverse effects that the Legislature could not have intended when it enacted that law." (*Klein*, *supra*, 50 Cal.4th at p. 83.)

As explained, construing the consideration exception to apply whenever consideration is paid for permission to enter land for a recreational purpose, regardless of whether the payment inures to the benefit of the defendant claiming immunity, is consistent with Legislature's goal of encouraging private landowners to open their land to public use. Landowners could safely be assured that charging a fee for access, even a minimal one simply to help defray any increased costs occasioned by public use, would not put them at potential risk of liability out of all proportion to their own responsibility for dangerous conditions on their property, because the risk of tort liability would be spread fairly among all potentially culpable joint tortfeasors, including those with a non-exclusive, nonpossessory right to use that land too.

The contrary interpretation urged by PG&E, even were it supported by the statute's literal language, leads to problematic results we do not think the Legislature intended. (See *People v. Vidana* (2016) 1 Cal.5th 632, 638 [" 'a statute's literal terms will not be given effect if to do so would yield an unreasonable or mischievous result' "].) Under PG&E's construction, every stripe of easement holder and licensee would have nearly absolute immunity from premises liability torts to paying recreational

19

users of land, *and* to the landowners who permit them access there (see *Prince v. Pacific Gas & Electric Co.*, *supra*, 45 Cal.4th 1151). Not only would this create a windfall untethered to the statute's purpose and potentially deter property owners from opening their land to public use, it also would be dangerous.

To start with, PG&E itself would owe a dangerously diminished duty of care to anyone paying to camp, hike or even picnic at a park served by its power. The accident here befell a child sleeping in a tent beneath an allegedly negligently maintained tree. But on PG&E's theory, the immunity it invokes under section 846 would seemingly extend to the actual operation and physical maintenance of its entire electrical distribution infrastructure at San Mateo County Memorial Park too. Fires; explosions; downed power lines; any manner of physical hazard that could cause injury to paid visitors in the vicinity of an electrical distribution system would potentially be immune from tort liability, absent willful or malicious misconduct on PG&E's part (§ 846, 4th par., item (a)). It's hard to imagine a policy rationale the Legislature could have had in mind for that result.

PG&E argues hypotheticals such as these (for example, involving a paid park visitor getting electrocuted by a negligently maintained electrical wire), "test[] the boundaries of recreational immunity" under section 846 which is concerned with "property-based duties underlying premises liability' (*Klein*, *supra*, 50 Cal.4th at p. 72) and "raise[] other issues" regarding the scope of section 846 immunity "that have nothing to do with the issues raised here." But it doesn't seem far-fetched that a utility would invoke section 846 in defense of personal injury actions of this sort which appear to fall comfortably within the statute's scope.[16] Indeed, we do not understand PG&E to concede here that section 846 would *not* apply in these scenarios.

---

[16] PG&E cites no law to support its contrary contention, and the language of section 846 negates any duty to, inter alia, "keep the premises safe . . . or to give any warning of hazardous conditions, . . . [or] structures . . . on those premises." (§ 846, 1st par.) Indeed, premises liability claims arise from "ownership or possession of land," and include the theory that a defendant " 'allowed a dangerous condition on its

20

More broadly, on PG&E's theory, all utilities and other easement or license holders would enjoy practically absolute immunity to paying patrons on other people's land, save for willful or malicious misconduct (§ 846, 4th par., item (a)). That standard is exacting, consisting either of intentional harm or acting in reckless disregard of a known risk of serious injury; mere negligence, or even gross negligence, is not enough. (See *Manuel v. Pacific Gas & Electric Co.*, *supra*, 173 Cal.App.4th at pp. 947–949.) The Legislature intended this result so far as the uninvited, *nonpaying* child who happens upon a transmission tower in a remote location in a rural area and tries to climb it. (See *id.* at pp. 931–932 & 938, fn. 4.) But paying patrons of ski resorts, waterfront marinas, amusement parks, stadiums, arenas, state or national parks with improvements and infrastructure, and other large-scale, for-profit recreational venues present quite another calculus. Any owners of power lines, gas pipelines, railroad tracks, telecommunications lines, cell phone towers or other utility equipment that may be situated on (or underneath) such areas, and subject to licenses or easements that confer rights of access like PG&E's license does here, and any owners of concession licenses too (whether for food and drink, boat rentals, zipline rides or bicycle rentals), would likely be immune from all but the most aggravated forms of tort liability for premises liability claims even though the landowner itself (having charged for entry) would not be. With mere negligence, and even gross negligence, off the table, utilities and other licensees or easement holders would have little, if any, incentive to conduct themselves safely on recreational property even when an access fee is charged—particularly knowing that a visitor's payment would abrogate *the landowner's* immunity from suit. We do not believe the Legislature intended this as a price for encouraging *free* public access to recreational property.

PG&E's interpretation also would lead to arbitrary distinctions. (See *Klein*, *supra*, 50 Cal.4th at p. 84.) For example, if a paying visitor to a private campground were injured (or worse) by a falling utility pole, a dangerously obscured ditch, or even shards

property' " or, put another way, failed "to maintain land in one's possession in a reasonably safe condition.' " (*Klein*, *supra*, 50 Cal.4th at p. 80.)

of broken glass or construction debris left lying on the ground, that visitor could be compensated in tort damages only if responsibility lay with the campground's owner, but not if PG&E or one of its maintenance crews were to blame, or a private concessionaire licensed to sell food or amenities there, or anyone with an easement to cross the property for ingress and egress.  Viewed from the paying visitor's perspective, that result is arbitrary.  (Cf. *ibid*. [discussing drunk driving scenario].)  The visitor would be indifferent to the niceties of who received the benefit of her entrance fee; from her perspective, she merely could expect that, in paying it, she would not be held responsible for her own safety as a tradeoff for public access to that land.  (See *Hubbard*, *supra*, 50 Cal.3d at p. 192.)

## VI.

### *The Case Law*

As we have said, the question here is one of first impression under California law. Nevertheless, the interpretation we adopt is supported by *Ducey v. United States* (9th Cir. 1983) 713 F.2d 504 (*Ducey*), in which the Ninth Circuit construed a similarly worded exception in Nevada's recreational immunity statute that, like section 846, "does not specify to whom consideration must be tendered." (*Ducey*, at p. 513.)  The Ninth Circuit concluded that "consideration must be tendered directly or indirectly to a person who has the power to grant or deny permission to participate in recreational activities" for the exception to apply.  (*Ibid*.)

The plaintiffs in *Ducey* were spouses of three people killed in a flash flood while camping and boating in a national recreational area operated by the National Park Service.  (*Ducey*, *supra*, 713 F.2d at p. 507.)  The victims had paid rental fees and other charges to a concessionaire of the national park service for various amenities but had paid no fee to either the park service or the United States to enter the area or to engage in recreational activities.  At issue was whether the decedents' payments to the concessionaire abrogated the United States' immunity from suit under Nevada's statute. (*Ducey*, at pp. 507–509.)  The Ninth Circuit held that they did, concluding both that these charges constituted "consideration" within the meaning of Nevada's statute even though

22

technically they weren't entrance fees (*Ducey*, at pp. 509–512) *and* that they were paid in return for permission to recreate, as required by the statute (*id*. at pp. 513–515).[17]

Necessary to the court's decision on the latter point was its determination that Nevada's statute requires consideration to be paid to the party granting permission to recreate. The court explained, "Subsection 41.510(3)(b) does not specify to whom consideration must be tendered. We think it a fair reading of the provision, however, that *consideration must be tendered directly or indirectly to a person who has the power to grant or deny permission to participate in recreational activities*. Since the concession agreement did not give [the concessionaire] the power to deny permission to recreate in Eldorado Canyon, *the exception is applicable only if consideration was tendered, directly or indirectly, to the United States in return for permission to recreate in Eldorado Canyon*." (*Ducey*, *supra*, 713 F.2d at p. 513, italics added.) For reasons irrelevant here, the Ninth Circuit concluded that the condition was met (because the United States had received consideration indirectly).[18] (*Ibid*.)

The Ninth Circuit said that the result, moreover, was supported by general policy considerations underlying the consideration exception. (*Ducey*, *supra*, 713 F.2d at p. 514.) As *Ducey* explained, the consideration exception "is not simply a mechanical test," but is intended "to serve more broadly as a proxy for differentiating *the entrepreneur-landowner whose land is open for business reasons* from the landowner whom the statute encourages to *open his land on a gratuitous basis* by the promise of

---

[17] Nevada's statute provided in relevant part: "This section does not limit the liability which would otherwise exist for: [¶] . . . [¶] (b) Injury suffered in any case where permission to hunt, fish, trap, camp, hike, sightsee, or to participate in other recreational activities, was granted for a consideration other than the consideration, if any, paid to the landowner by the state or any subdivision thereof." (*Ducey*, *supra*, at p. 509, fn. 3, quoting Nev. Rev. Stat., § 41.510 (1973).)

[18] The concession agreement gave the government "tangible economic benefits" including a fixed percentage of all operational revenues, and the Ninth Circuit also reasoned that implicit in the concession agreement was a requirement the government would allow users to enter the area to use the concession facilities. (*Ducey*, *supra*, 713 F.2d at p. 513 & fn. 13.)

23

immunity." (*Ibid.*, italics added.) In other words, the exception is concerned chiefly with ensuring public recreational access to land, not financial remuneration of landowners.

PG&E contends *Ducey* is distinguishable principally because there was a pattern of indirect payment of consideration to the party whose immunity was held to be abrogated. And that is accurate. But the reason those facts were relevant is because of the legal standard the court applied, a standard PG&E overlooks. In *Ducey* (unlike here) the party asserting immunity in litigation and the party with the power to grant access to recreational users were one and the same (i.e., the United States, the actual landowner). Under *Ducey*'s construction of the immunity statute, though, the fact that the party claiming immunity had received consideration was legally irrelevant, and played no part in the court's analysis. The only relevant issue was whether consideration had been received by the party who legally granted the plaintiff permission to participate in recreational activities there. We read California's statute similarly.[19]

PG&E cites several decisions it contends support a contrary interpretation, but we do not agree. Three addressed the question of what constitutes consideration for "permission to enter" under the statute, rejecting various benefits argued to qualify; they did not address *to whom* consideration for permission to enter must be paid. (See *Johnson*, *supra*, 21 Cal.App.4th at p. 312 [exception held inapplicable to hold harmless agreement signed as a condition for free use of picnic area] and footnote 8, *ante*; *Miller v. Weitzen* (2005) 133 Cal.App.4th 732, 739–741 [dues paid to horse riding club that were used to maintain horse riding trails]; *Mansion v. United States* (9th Cir. 1991) 945 F.2d 1115, 1118–1119 [conjectural benefit of improved labor relations resulting from

---

**19** PG&E also asserts *Ducey* is distinguishable because Nevada's statute "did not require payment for permission to enter the property but instead applied ' "where permission to hunt, fish, trap, camp, hike, sightsee, or to participate in other recreational activities, was granted for a consideration . . . ." ' " It does not explain why that matters, though, and clearly it does not. That California's exception is phrased in terms of consideration paid for "permission to enter" for a recreational purpose (§ 846, 4th par.) whereas Nevada's is phrased in terms of consideration paid for permission to undertake specified recreational activities (see footnote 17, *ante*) is a distinction without a difference.

24

picnic held on employer's property].) PG&E also cites what it calls "persuasive dicta" that is simply an observation that confirms the legal issue we decide here is a question of first impression. (See *Johnson*, at p. 316 ["we are aware of no cases in which the consideration did not involve the actual payment of an entrance fee by plaintiff to defendant"].) In addition, PG&E cites a portion of the First Circuit's per curiam decision in *Collins v. Martella* (1st Cir. 1994) 17 F.3d 1 construing New Hampshire's recreational use immunity statute, stating that the consideration exception is not triggered "simply because a benefit is paid to an unconnected third party." (*Id*. at pp. 2, 5.) The parties disagree whether this language is dictum or an alternative holding but, regardless, PG&E takes the language out of context. In that case, none of the owners of the beachfront property in question were paid anything by the plaintiff for access to the beach where he was injured. The court merely rejected the argument, nonsensical on its face, that under New Hampshire's statute, the purchase price the property *owners* paid third parties to buy their lots constituted consideration paid for the *plaintiff's* access to the private beach. (See *id*. at p. 5.) We glean nothing of any import from the language PG&E quotes from *Collins*.

Finally, at oral argument, PG&E's counsel invoked what he characterized as a "holding" of *Wang*, *supra*, 4 Cal.App.5th 1. We take a moment to address that point in full to remind counsel of their obligation to represent legal authority accurately to this court, an obligation no less weighty during oral advocacy than in counsel's written briefs.

*Wang* was a personal injury action brought against the owners of a meadow who had permitted participants in a historic wagon train event to camp out on their property overnight along with their horses. The event participants paid a fee to the event organizers to participate (not to the landowners), and the event organizers arranged for accommodations. (*Wang*, *supra*, 4 Cal.App.5th at pp. 6–8, 29.) A horse ran away and injured the plaintiff who was on a neighboring property and had nothing to do with the event. (*Id*. at pp. 5–6.)

In oral argument, PG&E's counsel argued that the court in *Wang* held the fee the wagon train participants paid the event organizer did not trigger the consideration

25

exception because it wasn't paid to the defendant landowner, which supported PG&E's construction of the statute. PG&E's counsel stated that in *Wang* "the court of appeal rejected an argument that that fee would waive the defendant landowners' immunity," and in support he quoted the following portion of *Wang*, including *Wang*'s citation to *Johnson*, *supra.*: "That [event organizer] raises funds and charges participants to join the Wagon Train does not affect the landowner's reliance on section 846. (*Ibid.* [company employees paid company club to attend picnic].).)" (*Wang*, *supra*, 4 Cal.App.5th at p. 29, citing *Johnson*, *supra*, 21 Cal.App.4th at p. 310.)

To say we were surprised later to re-read the quotation in context would be an understatement. The portion of the opinion from which counsel quoted has nothing to do with the consideration exception. It concerns the question whether the wagon train was for a recreational purpose, a wholly different issue. (See *Wang*, *supra*, 4 Cal.App.5th at pp. 28–30.) Counsel's argument that *Wang* addressed whether the event fee triggered the consideration exception borders on a misrepresentation. We do not condone it, and trust in the future counsel will take greater care.

## VII.

### *PG&E's Remaining Contentions*

Having concluded the consideration exception applies here, we come to PG&E's remaining arguments in favor of narrowing the exception, and reject them.[20]

---

[20] PG&E also makes two arguments in passing not raised below and not developed to any meaningful degree in this court, and we decline to consider them. Specifically, it contends it would be "illogical" for it to be denied immunity because it owed no duty to protect Zachary from this falling tree in the first place; we decline to address the scope of its common law duties because the only issue PG&E raised in its summary judgment motion is whether any such duty has been abrogated by section 846. Nor do we consider PG&E's parenthetical statement in its petition, not supported by any argument in its supporting memorandum of points and authorities, that the $50 campsite rental fee was "arguably not consideration for permission to *enter* the property." (But see *Graves v. U.S. Coast Guard* (9th Cir. 1982) 692 F.2d 71, 73 [fee paid for permission to camp abrogates immunity for injuries sustained in swimming accident].)

26

## A. The Statute's Breadth

PG&E argues the consideration exception should be narrowly construed, citing authority that section 846 is "extremely broad" in scope (*Ornelas*, *supra*, 4 Cal.4th at p. 1105) and that exceptions to immunity should be construed narrowly (*Johnson*, *supra*, 21 Cal.App.4th at p. 315). But the Supreme Court has not addressed whether immunity exceptions should be narrowly construed and, regardless, these principles go only so far. In *Klein* our high court rejected a broad construction of section 846 that was at odds with its plain language. "Although section 846 is broad in many respects," the court said, "it is not all-encompassing." (*Klein*, *supra*, 50 Cal.4th at p. 81.) Furthermore, cases declining to construe the consideration exception broadly rejected interpretations that were practically limitless. (See *Johnson*, at p. 316 [rejecting interpretation that would "encourage an injured recreational user to claim that nearly any rule, restriction or regulation imposed by a landlord" granting free access would abrogate immunity]; *Mansion v. United States*, *supra*, 945 F.2d at p. 1119 [rejecting interpretation that "would expand ad absurdum allowing the exception to effectively swallow the rule"].) Here, though, all we decide is that payment of *any* consideration for permission to enter property for a recreational purpose abrogates the immunity under section 846 for anyone potentially responsible for the plaintiff's injuries. There is no risk of the consideration exception swallowing the general rule of immunity by this textually based, straightforward, bright-line determination.

## B. The Invitation Exception

PG&E also argues the consideration exception should be construed in parallel with the separate exception for invited persons. That exception, applicable "to any persons who are expressly invited rather than merely permitted to come upon the premises by the landowner" (§ 846, 4th par., item (c)), has been held by our colleagues in Division Three to abrogate the immunity of the invitor only and not others who enjoy immunity under

27

the statute too.[21]  (See *Jackson*, *supra*, 94 Cal.App.4th at p. 1118.)  Thus in *Jackson*, PG&E was held immune from suit, as an easement holder, from claims by a child who was injured while retrieving a kite from a power line despite evidence that the landowner had expressly invited the child onto the property where the power line was located.  (*Id.* at pp. 1115–1119.)  In resolving the scope of the invitation exception, *Jackson* reasoned principally that its interpretation was "consistent with the Legislature's clear intent to immunize *all* holders of interests in real property" (*id.* at p. 1118), and that a contrary result was not consistent with the rationale for the invitation exception, because "section 846 was designed to encourage property owners to permit recreation on their land, [whereas] '[b]y carving out an exception for those persons who are personally invited, the Legislature showed it did not have a similar concern with encouraging property owners to provide access for the owner's personal guests. . . . Property owners do not need governmental encouragement to permit personal guests to come onto their land.' "  (*Id.* at pp. 1118–1119.)

*Jackson* pre-dates *Klein*'s admonition that section 846 was not intended to be "all-encompassing" and *Klein*'s actual holding which reflects that the statute has its limits, and is not a panacea for all manner of tort claim arising from recreational pursuits.  (See *Klein*, *supra*, 50 Cal.4th at p. 81.)  We express no opinion as to whether *Jackson* was correctly decided, though, because there are significant differences between the consideration and invitations exceptions, and we do not agree the two provisions should be read in parallel.

To start with, the two exceptions differ structurally.  Section 846's third paragraph negates the liability of *all* holders of property interests, "whether possessory or nonpossessory, who give[] permission to another for entry or use" for a recreational purpose, by providing among other things that the giving of such permission "does not thereby . . . (b) constitute the person to whom permission has been granted the legal

---

[21]  The Supreme Court has expressly not weighed in.  (See *Prince v. Pacific Gas & Electric Co.*, *supra*, 45 Cal.4th at p. 1160, fn. 5.)

status of an invitee or licensee to whom a duty of care is owed." (§ 846, 3d par.) The express invitation provision of the fourth paragraph then clarifies that section 846 does not apply "to any persons who are expressly invited rather than merely permitted to come upon the premises by the landowner." (*Id*., 4th par., item (c).) Thus, reading the statute as a whole, the invitation exception expressly limits one of the immunities conferred by the third paragraph. (See *Klein*, *supra*, 50 Cal.4th at p. 78 [third paragraph "adds an additional immunity" beyond those in first paragraph].) But the consideration exception does not. And because the immunity the express invitation exception limits is *itself* limited to holders of property interests "who give[] permission to another for entry or use" for a recreational purpose, there is a textual basis for similarly limiting the express invitation exception.

The two exceptions also differ considerably in terms of their relationship to the Legislature's goal of encouraging free public access to property. Zachary argues, and we agree, that, unlike charging consideration for permission to enter, an express invitation doesn't undermine the statute's purpose. As Zachary puts it, "Exacting consideration in exchange for permission to enter for a recreational purpose necessarily excludes those unwilling to pay the consideration, and thus entirely vitiates the statute's objective of holding the property open to the public free of charge. In contrast, expressly inviting one person to enter does not thereby exclude others not expressly invited. The public at large remains free to enter and recreate without charge." In other words, when consideration is charged for the public to enter property to recreate there is no longer a reason for *any* property interest holder to retain immunity.

Finally, a narrow interpretation of the invitation exception would not discourage property owners from opening their lands to recreational use in the way we have explained PG&E's construction of the consideration exception would. Unlike the consideration exception ("where permission to enter for the above purpose was granted for a consideration" (§ 846, 4th par., item (b))), the express invitation exception applies even when the plaintiff has no recreational purpose in visiting a premises; immunity is abrogated by an invitation for any purpose. (See *Calhoon v. Lewis*, *supra*,

29

81 Cal.App.4th at p. 114.)  Thus, eliminating only the invitor's immunity when an invited guest gets injured while participating incidentally in an activity considered to be recreational (see, e.g., *id*. at p. 110 [skateboarding while waiting for a friend]), and not the immunity of others such as license or easement holders, would not necessarily dissuade that landowner from permitting *any* recreational access by the public.  As a practical matter, there is little risk a property owner would close its property to recreational users generally if forced to bear liability for injuries caused by an easement or license holder to an invited guest who might or might not even have a recreational purpose in visiting.  As we have explained, though, the calculus conceivably would be quite different regarding paying visitors making use of property on a (presumably) more regular and higher-volume basis, and specifically for a recreational purpose.

## DISPOSITION

We do not think the Legislature intended to confer on holders of nonpossessory interests absolute immunity from premises liability to paying recreational visitors of property (save for willful and malicious misconduct), in circumstances in which even the property's owner would not be immune.  Section 846's consideration exception means what it says:  "This section does not limit the liability which otherwise exists . . . (b) for injury suffered in *any* case where permission to enter for the above purpose was granted for a consideration . . . ." (§ 846, 4th par., italics added.)  When an individual pays consideration for permission to enter property for a recreational purpose, section 846 does not apply.

The petition for writ of mandate and/or prohibition is denied.  The stay of trial court proceedings this court entered on February 4, 2016, is hereby lifted as between Plaintiff Zachary Rowe and Defendant Pacific Gas and Electric Company only.  This decision shall become final 30 days after its filing.

_____

STEWART, J.

We concur.

_____

KLINE, P.J.

_____

RICHMAN, J.

Trial Court:   San Mateo County Superior Court

Trial Judge:   Hon. Steven L. Dylina

Counsel:

Horvitz & Levy, Robert H. Wright, Jeremy B. Rosen; Pacific Gas & Electric Company, Barbara J. Damlos; Sedgwick LLP, Gregory C. Read for Petitioner.

Rouda, Feder, Tietjen & McGuinn, Timothy G. Tietjen; Law Office of Gerald Clausen and Gerald Clausen for Real Party in Interest.